CHARLES TOWNE *v.* GEORGE LEACH, *and* Trustees LEVI A. EDGELL AND HIRAM PHELPS, *and claimant* HIRAM PHELPS.

*Trustee process. Practice. Joint Tenants. Claimant. Attachment.*

P. and L. made a contract by which L., who owned a patent right, authorized P. to sell the same in certain States of the Union, and it was agreed that P. was to sell the same; that out of all property and money received by P., by means of such sales, the expenses thereof should first be paid, and the remainder should be equally divided between P. and L., and that this division should be made as early as reasonably could be, and from time to time, whenever any such money or property should be received. The transaction of the business thus provided for necessitated the incurring of expenses which did not apply solely to any particular sale, but to the whole business together. *Held,* that under this contract the proceeds of the sales previous

Towne *v.* Leach et al.

to a settlement of their expenses, belonged to P. and L. jointly, and no part thereof to either of them severally, and that individual creditors of neither party could by means of the trustee process, attach such party's interest in any of their joint property in the hands of a third person, whether such property was tangible or a debt due from such third person to P. and L.

If in a trustee process the plaintiff, trustee and claimant proceed either in the county court, or before a commissioner, where a commissioner can try the question, to a trial of the claimant's rights upon their real merits, and the substantial claims of the claimant fully appear, and have been tried upon their merits, without objection to the form of proceeding, it is too late to object in the supreme court that no allegations have been filed by the claimant.

In a trustee process, where a claimant is cited in or appears voluntarily, and his claim affects or determines the liability of the trustee to the plaintiff, the case, so far as the conflicting rights of the plaintiff and claimant are concerned, is within the jurisdiction of a commissioner, and his decision is conclusive, as to the facts upon which the decision of the case must turn.

TRUSTEE PROCESS. The commissioner reported that in February, 1856, Hiram Phelps left with the trustee a quantity of dry goods for sale on commission, which Phelps then informed him belonged to himself alone, but that he afterwards told him that they belonged to himself and the defendant, Leach, as partners; that before the service of this trustee process the trustee had paid to Phelps from the avails of the sale of a part of such goods three hundred and twenty-five dollars, and that there still remained in Edgell's hands money from such sales, and goods unsold, amounting in all, in value, to two hundred seven dollars and seventy-two cents; that on the first of November, 1855, the defendant, Leach, and the trustee and claimant, Phelps, entered into a contract by which the former gave the latter a power of attorney to sell a certain patent right for a " grain cleaner," in all the New England States, Ohio, and certain counties in the State of New York; that by this contract it was agreed that Phelps should sell such patent right in districts of territory within the prescribed limits, with diligence and prudence; that he would at reasonable times render to Leach a true account of all business transacted by him under such power of attorney, and would pay over to Leach all money, property and choses in action received by him in the transaction of such business, to which under the terms of such agreement, Leach should be entitled;

that out of all the money, property and choses in action received by Phelps by reason of all or any of such business, all necessary expenses incurred therein, (exclusive of all other transactions or business) should first be paid, and the remainder should be equally divided between Phelps and Leach, and that one-half thereof should become the property of each respectively, which division should be made as early as reasonably could be, and also from time to time whenever any such money, property, etc., should be received by Phelps. The commissioner further reported that the goods left with Edgell by Phelps were received by the latter for the sale of certain territorial rights in such patent right, which sale was made in pursuance of the contract between Phelps and Leach above set forth, and that Phelps continued doing business under such contract and power of attorney until June 19th, 1856, when Leach revoked the latter.

Before the commissioner Phelps insisted that by force of such contract he and Leach became partners, and that their partnership accounts could not be settled by this mode of process, but this objection was overruled by the commissioner. Phelps then offered to prove that for a period of five months, including the date when he received the goods left by him with Edgell, Leach and Phelps sold other portions of such specified patent right territory, in some of which sales Leach participated, and in others Phelps acted alone ; that in some of these sales the expenses were paid by Leach, and in others by Phelps, and that sometimes the proceeds were taken by one party and sometimes by the other ; that a large indebtedness was incurred by them for castings necessary for presenting the patented article for sale ; that before these castings were finished, and before any settlement or adjustment between him and Leach, he received notice of the revocation of the power of attorney by Leach, since which time he had made no further sales, and had had no settlement or accounting with Leach, and that upon a just account of all the transactions under the contract a balance would be due to Phelps.

But the commissioner held such testimony inadmissible, and decided that each transaction under the contract was to be adjusted by itself, and that Phelps had no lien upon the balance of the avails of any one operation to secure him for advances in

any other, and that upon the foregoing facts, Edgell was trustee of Leach for the sum of two hundred seven dollars seventy-two cents.

Upon this report the county court, at the September Term, 1859,—REDFIELD, Ch. J., presiding,—adjudged Edgell chargeable as trustee for the amount reported by the commissioner, to which the claimant, Phelps excepted.

*Bradley & Kellogg*, for the claimant.

1. Were Phelps and Leach co-partners ?

Phelps contributed his time and services ; Leach his patent and as much time as he might be able to. They divided equally the profit and loss. There was a community of interest.

2. Can co-partnership funds be reached by trustee process, brought upon the separate debt of one of the co-partners ?

This is to us a novel way of winding up the affairs of a co-partnership. The creditors of a co-partnership ought to have notice and be made parties.

If a lien could be created upon partnership funds in the manner here attempted, we should not suppose it could be done until the creditors of such co-partnership were fully paid.

If the creditors must first be paid, then Phelps, who is a creditor, would absorb the entire fund.

We do not see how the construction of the contract contended for by the plaintiff can effect the rights of the parties. If each sale was to be settled by itself, still we insist that one partner cannot neglect to affect the division until his co-partner has by disbursements in the business far exceeded the value of the co-partnership property, and then demand the funds.

But the construction contended for is not the true one, nor the true import of the language used in the contract, " exclusive of all *other* transactions or business."

The word *other* refers to any *other* business connected with any other patent right, at least not connected with the " improved grain cleaner."

Neither the power of attorney nor its revocation can affect the rights of the parties, for the claim of Phelps for expenses and disbursements occurred before the revocation.

Towne *v.* Leach et al.

The creditors of Leach cannot acquire any rights nor enforce any claim as against Phelps, that Leach himself could not.

*Stoughton & Grant,* for the plaintiff.

The contract between Leach and Phelps did not constitute them partners   Phelps had no ownership in the patent or territory; they were not to share in the profits or losses.   What Phelps was to receive was in compensation for his services and disbursements; *Amber* v. *Bradley,* 6 Vt. 119; *Boardman* v. *Keeler & Allen,* 2 Vt. 65, and cases there cited; *Bowman et al.* v. *Bailey,* 10 Vt. 170; *Clement* v. *Hadlock,* 13 N. H. 186; *Newman* v. *Bean,* 1 Foster (N. H.) 93; *Rice* v. *Austin,* 17 Mass. 197; *Deny et al.* v. *Cabot et al.,* 6 Metcalf 82; *Holmes et al.* v. *Old Colony R. R. Co.,* 5 Gray 58, and cases there cited; *Bradley et al.* v. *White et al.,* 10 Met. 303.

Phelps claims that he has a lien upon this money to reimburse him for advancements made in other transactions, but it is not claimed that he has made advancements or incurred expenses in this particular transaction.   By the terms of the contract Phelps has no lien upon the money realized from this sale or transaction to reimburse him for advancements and expenditures in other transactions; *Deny et al* v. *Cabot et al.,* 6 Met 93.   And he has no right to hold on upon the proceeds of any particular sale for the purposes of a general settlement.   The idea of the division or settlement of the general result embracing all the transactions is expressly negatived.   Each transaction stands by itself, is independent of all others, and the accounting for and division of the proceeds thereof are to be made " *from time to time whenever such money, property, etc., shall be acquired or received."*   Here then was an independent transaction, a distinct sale and acquisition of property, one moiety of which belonged to Leach, and as there is no claim for expenses or disbursements in this transaction, the evidence was properly rejected.   And as Phelps has taken much more than half of the property, the plaintiff is entitled to hold, by this process, the residue as the property of Leach.   It will be noticed that the contract does not require the property acquired to be converted into money before division.   The specific property is to be divided, and one-half of it vested in Leach

as soon as acquired. One half of the property put into Edgell's hands belonged to Leach, and because the trustee has converted it into money, can Phelps hold it as against the *bona fide* creditors of Leach?

Phelps has appeared as claimant of this property, but the case shows no allegations of the nature of his claim, (see Comp. Stat., p. 263,) and the court is asked to aid him by permitting these funds to go into his hands, in *anticipation* of a balance in his favor on final settlement. What has the court to do with this final settlement? If we were proceeding against Phelps as trustee, the question might arise. But we wish to charge Edgell for the proceeds of property for which Leach could have sustained trover against Phelps, had Phelps wrongfully converted it, and we apprehend that the court will not step outside of the contract, to aid an uncertain claimant against a *bona fide* creditor.

ALDIS, J. The plaintiff summons L. A. Edgell and H. Phelps as trustees of one George Leach. Edgell files a disclosure in which he states that the goods and moneys in his hands were delivered to him by Phelps as his; that afterwards Phelps said they belonged to Leach and Phelps as partners. He also states that Leach claims that they belong solely to him, and prays that Phelps may be cited in as claimant to maintain their rights.

Upon the disclosure the question as to the liability of the trustee would be, first, are the goods the sole property of Leach? if so, the trustee would be liable; second, are they the partnership property of Leach and Phelps, and if so, can they be held by trustee process to answer upon Leach's individual debt? third, are they the sole property of Phelps, or has he such a joint interest as to defeat their being held for the debts of Leach?

In this state of the case Phelps also enters as claimant. The case is then referred to a commissioner, and the commissioner summons the parties who appear before him, Phelps appearing as claimant as well as trustee.

The commissioner reports that Leach owned a patent; that he and Phelps entered into an agreement for the sale of it to different districts of territory, and for incurring expenses in the business, and that the proceeds of the sales should be applied, first,

to pay expenses, and then to be divided between them; that there were various other stipulations in the agreement; that the goods and funds in the hands of the trustee were the proceeds of the sales of the patent under this contract, and were delivered by Phelps to the trustee, and that Phelps after that continued to do business under the contract till Leach put an end to the agreement. The contract between Leach and Phelps as to this business was in writing, and is set forth in the report. These facts are found by the commissioner, and do not appear to have been objected to by any of the parties, upon any ground.

Phelps then insisted that the contract between him and Leach was a partnership, and that therefore the trustee could not be held liable for partnership funds upon the individual debt of one of the partners; but the commissioner, *pro forma*, overruled this point.

Phelps then offered to prove that he and Leach, for a period before and after they acquired these goods, continued to do business under the contract, and incurred debts, large liabilities for castings and expenses, made various sales of the patent, and had unsettled accounts and dealings under the contract, and that on a just settlement there would be a balance due him from Leach. The commissioner construed the contract to mean that each transaction under it must be settled by itself, and that Phelps had no lien upon the balance of profits derived from any one operation to secure him for advances in any other, and therefore so construing the contract, held that in this one operation there was a balance coming to Leach, and which might be treated as belonging to Leach solely, and therefore that Edgell was liable; and he excluded the evidence for the purpose of presenting to the court the question as to the construction of the contract.

Upon the facts as found, and upon the contract as set forth, the counsel for Phelps contend, first, that Phelps and Leach were partners, and if so, their partnership funds cannot be applied to pay the individual debts of one of the partners, or be held liable by trustee process in a suit against one partner, when the other objects; second, that if the contract does not create a partnership strictly, still, the goods belonged to them jointly, and could not be divided or held as the separate property of either party, until

49

after a settlement, and till all their debts and expenses, whether joint or several, had been paid out of the joint fund, and the balance then on hand had been severed and divided between them, and that the funds in the hands of the trustee, being thus their joint property and liable for the subsequent expenses and transactions of Phelps, could not be held liable on Leach's debts.

The plaintiff, on the other hand, contends that by the contract the proceeds of the sales of the patent were the sole property of Leach, and so liable on his debts. Hence, the first question is as to the true construction of the contract.

We think that the intention of the parties in making the contract was, that the proceeds of the sales should belong to them jointly, and not to Leach individually. This is fairly inferable from the considerations, first, that such proceeds were the products of their joint means, one furnishing the patent right, the other the necessary expenses to present it for sale, and contributing his time and labor to effect the sales; secondly, the expenses were to be taken out of the proceeds of the sales, and then the remainder was to be equally divided between them, and one-half of such remainder to be delivered to and become the property of each one of them. This fairly implies that before division the ownership was to be joint. The property was to be liable for all debts and expenses, and could not be divided till they were first deducted. This is the express provision of the contract. By this provision an express lien on all their property was created for the payment of all debts and expenses, and forbidding a division till such payment had been made; a lien similar to that which is implied in law between partners.

The referee assumes that each separate transaction in the sale of the patent was to be settled by itself. But this does not seem to be warranted by the contract. The settlements and division between Phelps and Leach were to be at as early a time as could reasonably be, and be made from time to time as property or money should be received by Phelps.

It is obvious that large sales and numerous transactions were contemplated, and these might be upon credit. Large expenses might be incurred, and these, as for the castings, could not be separately applied to any one sale of the patent, but were intended

for many, if not for all. The territory within which the right to use and vend the patent was to be sold comprised New England, Ohio and part of New York. The expenses to be incurred for the sale of the patent would, to a great extent, be the same for one county, district or State as for another, and no distinction could be made as to the expenses incurred for any particular sale.

It is obvious that the settlements and divisions of property would be regulated by periods of time, and would comprise all transactions and expenses up to such times, and that it would have been difficult, if not impossible, to settle by separate transactions, for the expenses could not be so distinguished. Again, they could not tell that there would be any future sales, and hence all expenses ought to be deducted up to the time of each settlement.

This being the agreement of the parties, each settlement would include a full accounting up to the time of settlement, and all expenses would be a charge upon the avails, and there could be no division of the fund or avails till all the debts and expenses had first been deducted.

Upon this construction of the contract it results, first, that Leach has no separate interest in the funds in the hands of the trustee, but his interest, if any, is joint with Phelps; second, that whether he has any interest at all can only be determined by an accounting and settlement with Phelps of all their transactions growing out of the contract for the sale of the patent. In this view it is needless to inquire whether they were strictly partners or not, for if their contract gave them a joint interest in the proceeds of the sale, and subjected the proceeds to the payment of all debts and expenses before they could be severed as between the parties, the result as to the liability of the trustee must be the same as if they were partners in the strictest sense.

The plaintiff is a creditor of Leach; he has no debt against Phelps, or against Phelps and Leach jointly, and his debt does not appear to have had any connection with their enterprise as to the vending of the patent right. He can have no greater right to the fund in the hands of the trustee than Leach has. Clearly then, he cannot claim to hold the half of the net profits arising from the single transaction now in question, and the decision of the commissioner and of the county court, that the balance com-

ing to Leach upon this separate transaction might be so held without reference to the other dealings and transactions of the parties, was erroneous.

While the goods thus jointly owned were in the hands of Edgell, they might have been attached at law by a separate creditor of Leach, although in equity the creditor would be restrained from proceeding to sell them until the joint creditors had been first paid; *Washburn* v. *B. F. Bank,* 19 Vt. 272; can they be held by trustee process upon the separate debt of a creditor when the other part owner objects, as in. this case? If so, then the judgment should be reversed, and the case remanded to the commissioner to take the account and ascertain the balance.

Objections are very obvious to such a proceeding, both from the nature of the trustee process and the evils which would arise from the practical application of the rule.

1. The trustee is not liable to Leach alone, he is only liable to Leach and Phelps. He has no goods or credits belonging to Leach. Leach could not maintain an action against him for the funds he holds. Strictly then, he has no goods, effects or credits of the principal debtor. It has been held that one summoned as a trustee is not bound to disclose as to funds of the principal debtor which a partnership, of which he is a member, holds, and a debt due from the partnership is not thereby attached; *Knapp* v. *Levenway and trustee,* 27 Vt. 298. There is an analogy between that case and the one at bar in this, that there is the same want of legal privity between the parties here as there, an attempt to hold a joint fund by virtue of a several and separate liability, of one of the owners of the fund.

2. If the separate creditor of Leach proceeds to take an accounting, clearly his lien to the particular fund in the hands of this trustee ceases, and he pursues only the balance due Leach on a settlement of this and all other transactions. This. in effect, annuls the lien by this suit and changes it into a bill in equity, to settle the partnership. Such an application of the trustee process to the exercise of chancery powers for the settlement of partnerships and other joint adventures would be impracticable, full of mischiefs, and could never have been intended by the Legislature. A separate creditor of one partner or joint contractor,

could at any time by the trustee process compel the application of partnership funds to the payment of the separate debt of the partner (which the partner himself could not do without fraud,) or else force the partnership into a liquidation and settlement of all their affairs, in order to ascertain the several interests of one partner. This would be unjust and intolerable.

And although the evil would be less where the partnership or joint adventure was dissolved, still the process is wholly unsuitable for and could never have been intended to apply to such a purpose. Upon the facts as found by the commissioner, we think the trustee could not be held liable to the separate creditor of Leach.

Objection has been made upon this hearing that the claimant does not appear to have filed any allegations of his claim, and so no issue can properly have been formed as to his rights. Nothing appears as to whether allegations have or have not been filed, though counsel seem to admit now have been filed.

The statute provides that a claimant may allege and prove any facts material to his claim. The form and mode of alleging the facts is not prescribed by statute, but must be governed by the rules of practice and subject to the discretion of the court; and if all the parties waive all questions as to the forms of proceeding and proceed either in the county court, or before the commissioner, in a case where the commissioner can try the question, to a trial of the claimant's rights upon their real merits; and if on such trial the substantial claims of the claimant fully appear in the report of the commissioner on the case as stated by the court, and have been adjudicated upon as to their merits without objection to the form of proceeding, we think the party can not, for the first time in this court, raise the objection to the irregularity in the mode of presenting the claim by the claimant. Such appears to us to be this objection in this case. Had it been made in the court below the defect would, doubtless, have been cured by amendment by leave of the court.

It is said, however, that by the statute of 1853, the commissioner has no power to try the rights of the claimant; but they must be tried in the county court, and by court or jury.

That act provides that the commissioner shall take the disclo-
sure of the trustee and hear and examine testimony in respect to
the liability of the trustee, and determine all questions arising in
respect to such liability, and report to the court the facts in
respect to such liability with his decision thereon.

As the commissioner is to hear all testimony and determine all
questions in respect to the liability of the trustee, it seems to us that
he is not confined to the sole question of whether there are funds
in the hands of the trustee. The liability of the trustee is not to
be understood in this narrow and restricted sense. His liability
depends not upon that sole question, whether he has funds, but
upon the further question, do those funds belong to the principal
debtor. If the trustee knows facts which show they do not
belong to the principal debtor, he is not protected unless he
disclose them. So if he knows there are different claimants and
doubtful questions as to the character and ownership of the
funds, he should, as he has done in this case, set forth the facts
in his disclosure and pray that the parties interested may be cited
in to assert their rights. If they are cited in, or appear volun-
tarily, and their claims affect or determine the question of the
liability of the trustee, then, we think, the statute of 1853 applies
and the question may go to a commissioner. Here the question
as to the liability of the trustee depends upon whether the funds
are the separate property of Leach, or the joint property of
Leach and Phelps, and subject to an accounting under their con-
tract. This question is raised by the disclosure, and its decision
determines whether the trustee is or is not liable.

The question is not as to the proportions in which Leach and
Phelps may be interested in the fund, but whether the fund can
be held by a creditor of Leach. It does not establish Phelps'
claim to the fund as between him and Leach ; it only defeats the
claim of the plaintiff to hold the trustees liable to him for the
fund.

As the whole claim of the claimants affects only "the question
arising in respect to the liability of the trustee," (to use the words
of the statute) we think the statute of 1853 applies, and that the
commissioner had authority to try and decide the question.

In *Russell* v. *Thayer*, 30 Vt. 526, the court held that as the

question which settled the rights of the claimant was the same as that which settled the liability of the trustee, the commissioner had authority under the act of 1853 to decide the point. There the claimant and the trustee were the same person. The court in that case says : "The question of Thayer's liability as trustee involved, covered and exhausted the entire ground on which his right as claimant rested." So we hold in this case, that the question of the liability of the trustee covers the entire ground on which the right of the claimant rests : if the one is established the other must fail. It can make no difference whether the trustee and claimant are one and the same, or different persons, provided, that the question as to the right of one involves and settles the liability of the other.

We think, therefore, that the commissioner had jurisdiction of the subject matter, and that his report must be held as settling the facts upon which the decision of the case must turn. And upon the construction we give to the contract, and the view which we take of the law, we think that the trustee can not be held liable, and that the judgment must be reversed and judgment rendered, that the trustee is not liable, and that the claimant, Phelps, recover his costs of the plaintiff.

BARRETT, J., dissenting. Edgell and Phelps are severally summoned as the trustees of Leach. Edgell alone is pursued as trustee. The case was referred to a commissioner to take his disclosure and report facts. Phelps entered as claimant. The case proceeded to judgment against the debtor, and also against Edgell as his trustee. To the judgment against Edgell, Phelps as claimant, took exceptions, and thereon the case is now before this court. We are to revise it and ascertain whether error in point of law was committed against Phelps in rendering it.

The statute contemplates that a party coming in as claimant shall draw up and file allegations, setting forth his claim to the property or credit sought to be reached by the pending process, that issue may be taken thereon by the plaintiff, and a trial be had either by the court or the jury, as the court shall direct ; Comp. Stat., ch. 32, secs. 53, 54, 55. In this case Phelps filed no allegations, nor was any issue formed as to any right or claim

that he might have, nor was any mode of trying his claim directed by the court, nor any proceeding had in reference to it. All that the case shows as to any proceeding by him or in his behalf is, that he appeared before the commissioner, whose business was solely to hear the matter as between the plaintiff and the trustee, and there offered to prove certain facts. The commissioner rejected said offer, and as it seems to me for very good reasons. The matter of the claimant's claim was not within the scope of his commission, nor does it appear that the plaintiff or the trustee was assenting that the commissioner should take cognizance and proceed with the trial of it. The law of 1853 does not contemplate that the matter between the plaintiff and a claimant should be referred to a commissioner, but only the matter between the primary parties to the suit.

The facts found upon the disclosure of Edgell and the papers laid before the commissioner show that Edgell had received property and the avails of property, in which Leach primarily had an interest, and *prima facie* to the extent of one-half of the avails of the property thus received. Of said avails it appeared that more than one-half had been paid over to Phelps, the claimant, thus leaving the residue, both lawfully and equitably, as between Leach and Phelps, the property of Leach. Whether Leach was entitled to the property and funds remaining in Edgell's hands, as between Leach and Phelps, could only be controverted by Phelps, by showing matter outside and beyond the relation existing between them by force of the papers exhibited, and depending on matters resting *in pais*, which, in order to be available to Phelps as against the plaintiff, should have been in some manner alleged, so that issue might be taken thereon, and a trial had in due form of law.

Only in two respects does it seem to me that any question of error is presented by the case, as it is now before us; *first*, the rejection of the evidence offered by Phelps before the commissioner, by which he claims that he has been improperly prevented from showing his right as claimant. As already intimated, I do not regard the action of the commissioner in this respect to have been erroneous, and for the reason that no matter was before him that required him to go into a hearing of the claimant's

claim, as there was no allegation or issue on that subject, and no order of the court, such as is provided for and contemplated by the statute in that behalf. If, through negligence or misapprehension, Phelps found himself out of place in respect to his right to show his grounds of claim before the commissioner, it seems to me that his proper course was, before coming to this court, to have filed his allegations by leave of the county court, and proceeded to a hearing in due course in that court, and then upon a case properly made up, if the judgment had been against him, he could have come upon a proper footing into this court to assert and maintain his legal rights.

*Secondly*, does the case show that the judgment is without legal foundation? I think not. On the contrary, it seems to me to show that it has legal foundation, and in the absence of further showing, by the claimant, of other ground and reason for his claim to the property, I think the judgment was right; that is to say, I think the case shows funds of Leach in Edgell's hands, which, upon the facts now shown, it does not appear that Phelps has either the legal or equitable right to fasten upon, and that his right to do so can only be substantiated by his showing the facts that he offered to prove before the commissioner, which offer was, in my opinion as above stated, properly rejected.

Again, I have difficulty in seeing how Phelps is in position as the case now stands, to be properly complaining of the judgment of the county court. He was before that court as claimant. The judgment was in favor of the plaintiff upon the trustee's disclosure and the facts reported by the commissioner. Not having filed any allegations of claim, and thereby put himself in the position of a party litigant, of course the matter was proceeding as it properly should, in the same way as if he had not entered. It was proceeding between the plaintiff and the trustee.

The trustee is not complaining of, or excepting to the judgment. He is willing to stand the hazard of liability under the disclosure and the finding of the commissioner, and the judgment of the county court, leaving Phelps to pursue his rights in such way, legitimate or illegitimate, as he may see fit to adopt.

In my opinion the reversing of the judgment involves the virtual ignoring of the provisions of sections 53, 54 and 55 of chap.

32 of the Comp. Stat., and the engrafting of a new section into the trustee act of 1853, in addition to the general trustee law, and moreover will be incongruous with some features of the decision in *Russell* v. *Thayer et al.*, 30 Vt. 525, the opinion in which embodied, as I understood at the time, the concurrent views of the several members of the court who sat in the trial of the case.

I regret my inability to concur in the result in which my brethren agree, and dismiss the subject with this comprehensive statement of the reasons which lead me to dissent.