THOMAS BARTLETT *v.* JOHN B. WOODWARD, THE TOWN OF LYNDON, TRUSTEE, AND SAID WOODWARD AND DANIEL G. WATERMAN, CLAIMANTS.

*Trustee Process. Liability of Partnership Demand for the Sole Debt of one of the Firm.*

The defendant contracted in his own name with the trustee, to build a bridge for the trustee. W. was in fact partner with the defendant in the transaction, but the trustee had no knowledge of it. The defendant and W. both worked on the job. *Held*, that the trustee was not chargeable for any part of the contract price, in a suit against the defendant alone for his sole indebtedness.

TRUSTEE PROCESS. The plaintiff claimed that the trustee was indebted to the defendant for building a bridge in said town. The defendant, who was also one of the claimants, and said Waterman claimed that said indebtedness was to them jointly, as partners. The commissioner reported as follows :

" It seems that the town of Lyndon built a bridge in the fall of 1867 ; that the contract was made by two of the selectmen, Ingalls and Sanborn, with the defendant, as the plaintiff claims, or with Woodward & Waterman, a firm composed of the defendant and Daniel G. Waterman (a partnership formed expressly for the contract), as is claimed by the defendant and the claimants. The question as to with whom the contract was made, seems to be the only material question of fact in dispute. It is agreed that the town was to pay six dollars per foot, and that the amount to be paid was $702 ; and that $350 of this sum has been paid since the service on the trustee—in part to Woodward and in part to Waterman. The selectmen first applied to J. C. Morrison, who declined to take the contract, but referred them to Woodward and Waterman. Ingalls called on Waterman to inquire about Woodward. At Ingalls' request, Waterman wrote Woodward concerning the matter, and received a reply from him, requesting that Ingalls should meet him at the station on a given day. Ingalls did meet him, and took him to the bridge. After looking the job over, Woodward desired to see Waterman before closing the contract. Ingalls took him to see Waterman. After seeing Waterman, Woodward took the contract on the terms above stated, as Ingalls understood, for himself alone. In all of the negotiation's, Ingalls did not understand that Waterman was a party to the contract. Sanborn testified that Woodward, after returning from seeing Waterman, said : ' I will take the job,' or, ' We will take the job,' he can't say which. Woodward and Waterman both testified that they took the job together ; that, by agreement between themselves, each was to have $4 per day while they worked, and Woodward was to have a given sum for the use of certain machinery belonging to him, and the profit or loss was to be shared equally between them. Waterman worked all the time till the job was finished. Woodward was away some eight or ten days. After taking the contract, Woodward left Lyndon, leaving Waterman to hire help and make other arrangements. Waterman saw Morrison and engaged two hands of him, stating at the time that he and Woodward were to build the bridge together. The two hands whom Morrison had consented might work on the bridge, went to see Woodward & Waterman.

They saw Woodward, who was unwilling to pay them the price they asked, till he had seen Waterman. Failing to find Waterman, they saw Woodward again, who hired them. Before the bridge was wholly completed, one Horace Baxter (the work having been suspended for some reason) offered to Waterman to complete it, the work which remained uncompleted being that of covering the bridge with shingle, and Waterman hired him to finish it by the job. Woodward borrowed money at the suggestion of Waterman, and on the credit of Woodward & Waterman, to pay the help. This was before the suit was brought.

" Said Baxter, one of the hands that Morrison had let go, supposed, from his conversation with Woodward when he hired him, that he had been employed by Woodward & Waterman. The following letter from Waterman to Woodward, dated at Lyndon, Sept 27, 1867, is put into the case on the call of plaintiff's counsel, who objected to witness, John B. Woodward, stating its contents:

" ' MR. WOODWARD,
*Dear Sir :*—There is a town bridge to be built here, and no one ready to take hold of it. Can you come up and work by the day, if we could not get it by the job ? We could get our own price if you could come immediately, but I think we could do better to take it by the job. Write me by return mail.
DANIEL G. WATERMAN.
" ' You can have the work all yourself if you wish. Don't fail to write on receipt of this. It will take nearly two months to do the work.                                        D. G. W.'

" Waterman, in his testimony used in the chancery suit, which has been put into this case, testified as follows : ' Woodward came and closed the contract, that is, he and I closed the contract with Mr. Ingalls ; or rather, I should say, he went to Mr. Ingalls and closed the contract, and then came to me and offered me a chance to go in with him on the terms he had made.' Testifying in this case he says: ' Ingalls asked me if I was going to work for Mr. Woodward, or was going into company with him on the job. I replied that I was going in company with him.'

" Mr. Woodward testified : ' I made a proposition how I would build it, if Mr. Waterman would take the job with me. They asked me if I wanted to see Mr. Waterman. I told them I did, and Ingalls carried me up to Quimby's to see him. I talked with Mr. Waterman, and we agreed to take the job together. I then closed the contract, after seeing Mr. Waterman. I told Mr. Ingalls that Waterman and I had agreed to take the job together.'

" Mr. Ingalls testified that Waterman told him that if Woodward took the contract, ' he was going to work with him, or for him,'—could not state the precise language. Ingalls testified also that he did not know that Waterman had taken the job with Woodward—that he knew no man in the contract but Mr. Woodward.

" I find from all the evidence, that the selectmen of Lyndon made the contract with Woodward alone, without any knowledge that Waterman was to share in the undertaking. I also find that Woodward & Waterman built the bridge together, agreeing to share the profit or loss. But the plaintiff claims that even under their own statement of the relation which they sustained to each other, they were not partners. The testimony upon this point is as follows. Mr. Waterman states it thus :

" ' It was agreed that each should hire help, and we were to build the bridge together, and if there was any profit or loss, we were to share it equally. I was to pay Mr. Woodward extra for the use of rigging which he had. Each one, that is, Mr. Woodward and myself, were each to have the same price per day for our work. If one worked more than the other, he was to have more *pro rata.* It was agreed that we were to reckon our labor at $4 per day. It was agreed that Woodward should have at the rate of $2 per day for his rigging and tools while they were in actual use.' Mr. Woodward states it thus :

" ' The agreement was that each one of us was to have $4 per day when we worked, and I was to have a certain allowance for my machinery, and the profit or loss was to be equally divided between us.'

" The plaintiff claims that there was a mere pretence of partnership, to cover the contract price from attachment, and asks the commissioner so to find. I am unable so to find. And he also claims that the contract, as stated by Woodward & Waterman, does not in law amount to a partnership, and asks the commissioner to so find. I find that the contract between Woodward & Waterman was as stated by them, and that it amounted in law to a partnership as between them ; but that the partnership was unknown to the selectmen of Lyndon. Claimant's counsel claim that the liability of the town was to Woodward & Waterman, and that even if the selectmen did not know of the partnership arrangement, they should have known it, or, in other words, they knew enough to put them upon inquiry, and that proper inquiry would have put them in possession of the fact, and that their ignorance of the fact cannot now be taken advantage of by the plaintiff in this suit ; and request the commissioner so to find.

The commissioner does not so find. The plaintiff claims that if the selectmen supposed that Woodward alone was the contracting party (and the commissioner so finds), then there was no privity of contract, though there might have been a privity of interest between Waterman and the town, and that Waterman was simply a silent partner with Woodward, and being such, could not join with Woodward in an action against the town, to recover the contract price for building the bridge, and asks the commissioner so to find ; and also, that since Woodward is the only person who could maintain an action against the town, the town must be adjudged liable as trustee for the contract price of building the bridge.

" Your commissioner decides, as matter of law, that Woodward & Waterman could join in bringing an action against the town, and that the funds in the hands of the town belonging to the firm of Woodward & Waterman, namely, the contract price of building the bridge, cannot be held to respond to the claim of the plaintiff in this suit against Woodward, and that the trustee should be discharged. If the court should be of opinion that the commissioner is in error as to the law, and should rule that the trustee should be held liable for the contract price of the building of the bridge, then your commissioner finds that the trustee should be adjudged liable for the sum of $702."

The court, Ross, J., presiding, rendered judgment on the report, *pro forma,* that the trustee be discharged with costs, and allowed costs to the claimants. Exceptions by the plaintiff.

The plaintiff *pro se,* with whom was *Belden & Ide,* insisted that the contract having been made by the defendant alone, he was sole contractor with the town, and had the right to demand and sue for the contract price of the bridge ; that the defendant and Waterman could not maintain a joint action, because there was no privity of contract between them and the town ; and that they were not partners in the transaction.

*Geo. W. Cahoon,* for the trustee and claimants.

The defendant and Waterman were partners. Parsons Cont. 156, and note 2 ; Story Part. 51, 52, 53 ; *Griffith* v. *Buffam et al.* 22 Vt. 181 ; *Duryea* v. *Whitcomb,* 31 Vt. 395. A partnership may be limited to a single transaction. *Bowman et al.* v. *Bailey,*

10 Vt. 170; *Ripley* v. *Colby*, 23 N. H. 438; Morrison's Dig. (N. H.) 506, § 2; 507, §§ 16, 17.

Enough transpired to put the town upon inquiry as to who was to do the job, and to whom it was liable for the price. For any breach of the contract, the town could have sued the firm, or the firm the town. 27 N. H. 244; 38 Ib. 286; Morrison's Dig. 507, § 21; 1 Parsons Cont. 177, and note y; *Cottrill* v. *Vanduzen et al.* 22 Vt. 511; *Hicks et al.* v. *Crane et al.* 17 Vt. 449.

There was a privity of contract between Waterman and the town. Story Part. 155, 157; Watson Part. (2d ed.) 168 *et seq.* Collyer Part. 10, 12, 212, 313. A dormant partner can be joined as defendant, and can join as plaintiff. Story Part. 351, §§ 241, 242, and note 1; *Cothay et als.* v. *Fennell et als.* 10 B. & C. 671; *Lloyd* v. *Ashby et als.* 2 B. & Ad. 23; *Beckham* v. *Knight*, 4 Bing. 74; Collyer Part. 393, § 42; Parsons Part. 23, note a, 301; *Sylvester* v. *Smith*, 9 Mass. 119; *Everett* v. *Chapman*, 6 Conn. 347; Morrison's Dig. 509, § 52; *Boardman* v. *Keeler*, 2 Vt. 65; *Hilliker* v. *Loop*, 5 Vt. 116; *Lapham* v. *Green*, 9 Vt. 407; *Griffith* v. *Buffam et al. supra.*

A joint debt cannot be the subject of trustee process in a suit against one of the parties to whom the debt is due. *Towne* v. *Leach et al.* 32 Vt. 748; *Fairchild et al.* v. *Bascomb et al.* 37 Vt. 407; 19 N. H. 133.

The opinion of the court was delivered by

Ross, J. The commissioner has found that the contract for building the bridge was entered into by the trustee with Woodward alone, without any knowledge that Waterman was to share in the undertaking; and that Woodward and Waterman built the bridge together, under an agreement to share in the profit and loss, which makes them partners in the construction of the bridge. The commissioner has not directly found whether Woodward and Waterman were partners at the time the contract was entered into in the name of the town as one party, and in the name of Woodward as the other party. If the partnership existed at the time the contract was entered into, Waterman was a secret partner in the contract; and Woodward, in entering into the contract in his own

name, was acting as the agent of the partnership, consisting of Woodward and Waterman, and bound them both alike to the fulfillment of the contract; so that the town could have maintained an action against both, for a non or mal-fulfillment of the contract; and they could maintain an action as partners against the town for the recovery of the price for building the bridge. The majority of the court think that the facts found by the commissioner, make Woodward and Waterman partners at the time the contract was entered into by Woodward in his name alone. If such is the result of the facts found by the commissioner, the debt which would become due from the town by the construction of the bridge was, by the contract, a debt due to Woodward and Waterman as partners, and one, as regards the town, the collection of which they could enforce in the name of Woodward alone, because the contract was made in his name, or in the name of Woodward & Waterman as partners contracting under the name of Woodward. Whichever way the suit might be brought, the town would be entitled to all the set-offs and equities which it could have if the suit was brought in the name of Woodward alone. The indebtedness from the town, by the contract, was to the two as partners, and could not be attached by the plaintiff as the sole debt of Woodward, and the trustee was properly discharged, and the claimants allowed to hold the indebtedness from the town. *Towne* v. *Leach, trustees and claimant*, 32 Vt. 747. If, on the other hand, as I think, the result of the facts found by the commissioner places the formation of the partnership between Woodward and Waterman immediately subsequent to the making of the contract between the town and Woodward, Waterman could not be a party to that contract by reason of being the secret partner of Woodward, inasmuch as the partnership did not exist at the time the contract was made; and, therefore, Woodward could not have been his agent, or the agent of the partnership, in making the contract in his own name. Nevertheless, the fact remains, as found by the commissioner, that the contract was entirely performed by Woodward and Waterman as partners, and the entire indebtedness from the town created by the performance of the contract belongs to them as partners. The indebtedness of the

town never was perfected in, and of right never belonged to Woodward alone, except nominally. Under the doctrine established in *Smith* v. *Foster*, 36 Vt. 705, Woodward and Waterman could maintain an action in their joint names against the town for the recovery of this indebtedness, allowing to the town all the set-offs and damages which it might be entitled to under the contract against Woodward alone. If this indebtedness had been created by Woodward alone, or had, rightfully, at one time belonged to him alone, and Waterman had purchased one half of it, or a joint interest in it, he would have been obliged to have notified the town of such purchase, to have protected it from attachment by the trustee process as a debt due to Woodward. But the indebtedness having been created by the performance of the contract by Woodward & Waterman as partners, there has never been any purchase or transfer of an indebtedness of the town from Woodward to Woodward & Waterman; and hence no occasion for Woodward & Waterman to notify the town that such indebtedness belonged to them. The indebtedness of the town has never belonged solely to Woodward, or been his sole property. The trustee process only operated to attach the individual or sole rights or property belonging to Woodard in the hands of the town at the time of the service thereof. There were, and never had been, any such rights or property in the hands of the trustee. Hence, in whichever light the facts found by the commissioner are viewed, the result is the same : that the trustee was properly discharged, and the claimants allowed to hold the indebtedness due from the town.

The judgment of the county court is affirmed.