Lucius A. Smith, Administrator of Bartholomew Fuller, v.
E. J. Pollard.

The effect of a quitclaim deed, in the common form, is to convey simply the
right, title and interest, which the grantor then had in the land.

Nothing inserted in the *habendum* should be construed to extend the meaning
of the terms used in the *premises*, or that part which precedes the *habendum*,
—at least, if the language employed can be reconciled with the body of the
deed.

In this case the deed was in the common form of a quitclaim deed, and the
*habendum* was in these words,—" To have and to hold the *premises*, so that
neither the said Alexis' (the grantor) ' nor any one claiming under him,
should thereafter have claim, or right, to the *premises* aforesaid ; " and it
was held, that it should be construed to have reference to such title and
interest, only, as the grantor then had in the land ; and that it would not
estop him from subsequently acquiring and holding a superior right and
title to the land from some other source.

Ejectment for lot No. 12 of the second range of lots in Grafton.
Plea, the general issue, and trial by jury, May Term, 1845,—
Williams, Ch. J., presiding.

On trial the plaintiff gave in evidence the plan of the town, by
which it appeared, that the lot in question was divided to the right
granted to the society for propagating the gospel in foreign parts ;
and also proved, that the town, in 1806, sold the lot to Bartholo-
mew Fuller, who entered into possession of the same and paid the
annual rent to the town.   He also gave in evidence a deed of the
same land from Fuller to Amos Davis, dated January 5, 1821 ; a
deed of the same from Amos Davis to Joseph Davis, dated April 23,
1828 ; a power of attorney to sell the same, from Joseph Davis to
Bartholomew Fuller, dated April 23, 1828 ; a deed of the same
from Fuller, as agent of Joseph Davis, to Alexis Blood, dated July
26, 1830 ; a deed from Alexis Blood to Luther Blood, dated Febru-
ary 9, 1832 ; a mortgage deed of the same land from Luther Blood
to Fuller, as agent of Joseph Davis, dated February 9, 1832, and
the notes thereby secured ; and proved that the defendant was in
possession of the premises.   It also appeared, that the several gran-
tees, above mentioned, had paid the annual rent to the town from

the time the town sold to Fuller through the year 1832; and that in 1833 the town, by their agents, duly authorized, abandoned and surrendered, by parol, to the society for propagating the gospel, all claims to the society lands in the town, and the society relinquished all claims to the rent which had accrued prior to that time.

The deed from Alexis Blood to Luther Blood, above mentioned, was in the common form of a quitclaim deed, describing the land in question, and the *habendum* was in these words;—" To have and to hold the premises, so that neither the said Alexis, nor any one claiming under him, should thereafter have claim, or right, to the premises aforesaid."

The defendant, to prove the issue upon his part, gave in evidence the charter and plan of the town of Grafton; the English statute incorporating the society for propagating the gospel in foreign parts; a power of attorney from that society to Daniel Chipman and others, authorizing them to lease the lands of the society in this State, with power of substitution; a power from these attorneys to Horace Baxter to lease these lands; a lease of the land in question from Baxter to Jonas Smith, dated June 3, 1833; an assignment of that lease from Smith to Alexis Blood, dated April 20, 1841; and an assignment of the lease from Alexis Blood to the defendant, dated March 19, 1842. It appeared, that Luther Blood was in possession of the lands from the date of the deed to him from Alexis Blood to the time when Smith assigned to Alexis Blood the lease above mentioned.

The court instructed the jury, that whatever title Alexis Blood acquired by the assignment, from Jonas Smith to him, of the lease above mentioned, accrued for the benefit of Luther Blood and his assigns, by virtue of the clauses of warranty in the deed from Alexis Blood to Luther Blood of February 9, 1832, and that, all the other deeds having been duly recorded, no title could pass to the defendant by virtue of the assignment to him, by Alexis Blood, of the lease; and the jury were directed to return a verdict for the plaintiff. Exceptions by defendant.

*Keyes* and *Walker* for defendant.

1. If the deed from Alexis Blood had professed to convey *the land,* and had been a warrantee deed, we admit the doctrine of es-

35

toppels would apply;—but it seems to be admitted, that it applies only in case of warranty. *Foot et al.* v. *Emerson,* 10 Vt. 336, 346. *Blake et al.* v. *Tucker,* 12 Vt. 39, 44. 11 Johns. 91–97. 13 Johns. 316–320. *Allen* v. *Sayward,* 5 Greenl. 227.

2. It has been expressly laid down, as settled law, that, if the deed be a quitclaim, the doctrine of estoppels does not apply, and the subsequently acquired title does not enure, &c. Stearns on Real Actions 34. Shep. Touch. 182. Co. Lit. 446. *Jackson ex d. McCrackin* v. *Wright,* 14 Johns. 193. *Comstock* v. *Smith,* 13 Pick. 116. *Blanchard* v. *Brooks,* 12 Pick. 47. 4 Kent 99, n.

3. This is strictly a quitclaim deed, without any covenant of warranty whatever. 2 Bl. Com. 306. Shep. Touch. 184. None of the words are used, from which covenants are implied. There is no covenant real running with the land, for the *land* is not attempted to be conveyed, as it was in *Schillinger* v. *McCann,* 6 Greenl. 364; and the words here used are not so strong as in the case of *Comstock* v. *Smith,* 13 Pick. 116.

4. But if the court think this deed contains a covenant of warranty, it can only be *of the estate attempted to be conveyed,* which was not the *land,* but Blood's *interest* in the land. *Jackson* v. *Stevens,* 16 Johns. 110. Co. Lit. sec. 6. *Sumner* v. *Williams,* 8 Mass. 162, 174. The technical meaning of the word *premises,* in a deed of conveyance, embraces every thing previous to the *habendum.* Co. Lit. 66. 8 Mass. 162, 174. 2 Bl. Com. 298. 7 Petersd. 676. But the word *premises* has also a *limited meaning,* viz. the *estate* attempted to be conveyed; and that word is generally used in this limited sense,—and always, when it follows the words "*to have and to hold.*" Ib. It will be noticed, this supposed covenant of warranty does not *follow* the *habendum,* as covenants of warranty generally do, but is *in* the *habendum,* making a part thereof. The object of the *habendum* is to limit the estate conveyed and always has reference to it. It may lessen it, but seldom enlarges it. Ib. If, then, Alexis Blood meant to convey his *right* only, and not the *land,* and the *habendum* has always reference to what is *conveyed,* when he said "to have and to hold the *premises,*" he meant, to hold the *right* he had sold, but not the *land,* which he had not sold. And the word "*premises,*" in the latter part of the *habendum,* is used in the same sense; for he says "the premises *aforesaid.*"

*W. C. Bradley* for plaintiff.

It is true, that, in this State, where a quitclaim deed is considered as a species of original conveyance of land, nothing more passes than the right of the grantor, unless there is some covenant, or warranty, to carry farther the effect of the deed; yet if there is a warranty, it shall bind to the extent thereof, as well in a deed of quitclaim as any other. Co. Lit. 265, § 446. *Goodtitle* v. *Morse*, 3 T. R. 370. *Jackson ex d. McCrackin*, v. *Wright*, 14 Johns. 193. *Jackson ex d. Weidman*, v. *Hubble*, 1 Cow. 646. *Henry* v. *Bell*, 5 Vt. 397. Here the whole case hinges on the word *premises*, as to the meaning of which, in deeds, there have been a great variety of decisions, growing out of the technical and popular senses of the word. 11 Co. 51. But the result seems to be, that, in general, the word *premises*,—"that which has been before mentioned;" Williams on Real Prop. 14;—extends to all that precedes the *habendum; Sumner* v. *Williams*, 8 Mass. 174; and that, in the application to particular parts thereof, regard must be had to the intention of the parties,—always observing, that, in cases of doubt, the inclination as to the construction of a deed poll is against the grantor. That it does not always refer to the mere extent of the grant is manifest from the cases; *Pembroke* v. *Syms*, Cro. Eliz. 782; but the land itself may be intended,—as we insist it was in the present case. For the premises are left unrestricted in the *habendum*. The grantee was to hold them in such manner, however capable of being expressed *(ita quod)* that Alexis neither should nor would *thereafter claim*, or demand, any *right* or title to the premises, or any part thereof. All this, as applied to the land, is of safe and easy construction, and we are to give, if possible, such effect, that every word may be made to operate in some way, or other. 2 Bl. Com. 380. But on the opposite construction the whole is unnecessary; because, having already granted his right and title, there was no occasion to stipulate that the grantor should not claim any right to his right, or any title to his title, or any part thereof, as there might be that he should not claim right or title to a distinct matter in the land itself; nor that he should be forever excluded and barred from such claim, he being already so by the simple grant.

It follows, that, if Alexis was barred, the clause extends to the present defendant, who comes under the description of a person

WINDHAM COUNTY.

claiming in his name, or behalf, which is tantamount to an assignee. *Butler* v. *Swinnerton*, Cro. Jac. 657.

The opinion of the court was delivered by

DAVIS, J.   It appears by the exceptions and the deeds therein referred to, that lot No. 12, in the second range of lots in Grafton, to recover which this action was brought, is a part of the right appropriated in the charter of the town to the society for propagating the gospel in foreign parts.   This lot, as early as 1806, was *sold* (leased) by the town to Fuller, the plaintiff's intestate, in pursuance of the act of the legislature of October 30, 1794 ; and he took possession and paid rent for several years to the town.   Several intermediate conveyances followed, terminating in a mortgage deed from Luther Blood to the plaintiff's intestate.   In this chain of title there exists a deed from Alexis Blood to Luther Blood, dated February 9, 1832, upon the construction of which the whole case turns.   On the other hand, the propagation society in England, having successfully asserted, by suit in the supreme court of the United States, their right to the lands originally granted to them, the lot in question was leased by H. Baxter, an agent of the society, June 3, 1833, to Jonas Smith, who afterwards assigned the lease to Alexis Blood, and Alexis Blood assigned to the defendant.   From this statement of the matter it is evident, that the plaintiff's intestate acquired no valid title to the land by the original lease from the town, nor, consequently, by his mortgage deed from Luther Blood, inasmuch as the mortgagor's title was derived from that lease.

The plaintiff, however, insists, that, since Alexis Blood is found to be connected with both chains of title, he having by his deed of Feb. 9, 1832, conveyed this land to Luther Blood, the plaintiff's mortgagor, and he having also taken an assignment of the lease from Baxter, April 20, 1841, and then afterwards having assigned the same to the defendant, the latter, as well as Alexis Blood, are concluded, by estoppel, from setting up the title, thus acquired, against the defective title of the plaintiff.

It is admitted by the plaintiff, that, if the deed from Alexis Blood to Luther Blood is merely a quitclaim deed, without covenant of warranty, it will not have any such effect ; while the opposite party admit, that, if it contained a general warranty, such as would enti-

tle the grantee to recover damages on eviction, then the doctrine of estoppel might be applied, to prevent circuity of action.

It is admitted, too, that privies in estate are as directly affected by this principle, as the original parties, so that, if Alexis Blood would be estopped from holding, as against the plaintiff, the title acquired from the Propagation Society, the defendant, who is assignee of the Baxter lease, and consequently privy in estate, would be equally precluded from setting up his title in opposition to the plaintiff.

But there are several insuperable difficulties, in applying this principle to the present case, so as to enable the plaintiff to recover of the defendant. The deed, out of which the question arises, is plainly nothing but a quitclaim deed, conveying to his grantee simply the right, title and interest he then had in the land. The clause in, or following, the *habendum* is the usual clause, assuring the grantee that neither the grantor, nor any other person under him, would do any act inconsistent with the grant. This is the substance of the clause, or covenant, if it may be called such. Nothing here inserted should be construed to extend the meaning of the terms used in the *premises*,—or what precedes ;—at least, if the language employed can be reconciled with the body of the deed. In this case it can, as well as in the case of *Sumner* v. *Williams*, 8 Mass. 162, where an equity of redemption was conveyed, and covenants were added, that the grantors were seized of the *premises*, had good right to convey, &c. There was an attempt then, as here, to extend the words of the *habendum* and covenants, so as to convey the land. The question arose in determining the extent of the liability of the grantors on their covenants,—there being a recovery against the plaintiff under a paramount title. It was held, that the defendant should not be charged with the amount paid to get an assignment of a mortgage on the land and a release of a right of dower.

The word *premises* does, indeed, often mean the land; this is, in fact, the popular and ordinary acceptation, when the subject requires such a meaning to be attached to it. It is equally well adapted to designate the interest, or estate, intended to be conveyed. Here it can, and we think ought, to be construed to have reference to such title and interest, as the grantor then had, and not to exclude him from acquiring and holding a superior right and title, from some other source.

As this disposes of the case, it is unnecessary to go at any length into other considerations, which arise from it. It seems clear, that the doctrine, for which the plaintiff's counsel contend, applies only in case of a general warranty of title against all persons, and not to those cases, where there exists a restricted warranty, confined to the grantor and his heirs and assigns. *Comstock* v. *Smith*, 13 Pick. 116, is a direct authority in point,—as it is also to the construction we have given to the language of the covenant.

This view of the subject renders it unnecessary to enter farther into what Lord Coke calls the curious learning of estoppels.

The judgment of the County Court is reversed and a new trial granted,