Rayner Cattle Company v. Ed. W. Bedford.

Application No. 1803.—Decided April 25, 1898.

**1.  Case Explained.**

The ruling of the court in Lamb v. James, 87 Texas, 485, was upon the theory, not that a sale by private parties of vacant, unappropriated public domain was illegal as being against public policy, but that such sale furnished no consideration for the contract.  (Pp. 650, 651.)

**2.  Consideration—Sale of Land—Public Domain.**

The conveyance of land,—or a claim thereto,—which is vacant public domain at the time, furnishes no valuable consideration; and the grantee can defeat notes given for the purchase money.  Following, Lamb v. James, 87 Texas, 485.  (P. 651.)

APPLICATION for writ of error to the Court of Civil Appeals for the Second District, in an appeal from Knox County.

The case upon a former appeal is reported in 13 Texas Civ. App., 618 (35 S. W. Rep., 933), where a recovery by plaintiff was reversed.  On a second trial plaintiff appealed from a judgment for defendant, which was affirmed in an opinion as follows:

HUNTER, Associate Justice.—This suit was filed by appellant against appellee on October 16, 1893, to recover on three certain promissory notes executed by appellee to it on July 24, 1890, for section No. 90, block 45, H. & T. C. R. R. Co., containing 640 acres, and to foreclose the vendor's lien on said land.  The defense was failure of consideration, in that the title was not in appellant at the date of the sale, and that it had no valid claim thereto, but was in the State of Texas, it being public school lands of the State; and also a plea in reconvention, praying judgment for $138.20, paid to appellant on said land July 24, 1890, and $193.80 paid on said land July 24, 1891, and for the cancellation of the notes sued on.  This answer was filed October 31, 1893.  Appellant replied that it only quit-claimed its interest and claim to the land, and that by contract it was only bound to show a title from Martin Casey, who had located the H. & T. C. R. R. Co. certificate on the land, and that it had fully performed its contract; and also pleaded the statutes of limitation of two and four years against appellee's cross action to recover back the sums of money paid to it on the purchase price as aforesaid.  The case was tried by the court without a jury April 27, 1897, and judgment was rendered against appellant and in favor of appellee, Bedford, cancelling the notes sued on, and for the two sums of money, with interest at 6 per cent per annum from the respective dates they were paid to appellant; and to reverse this judgment this appeal is prosecuted to this court on the conclusions of fact and law only as found by the District Court.

These conclusions of fact are not objected to and we adopt them.  They are as follows:

"(1) I find that the defendant, Ed. W. Bedford, executed and delivered to the plaintiff, the Rayner Cattle Company, the notes sued on in this cause, the originals of which are attached to the plaintiff's original petition as exhibits; and that said notes, after maturity, were placed by the plaintiff in the hands of Holman & Montgomery, attorneys at law, for collection.

"(2) That said notes were given in consideration of a conveyance executed by the Rayner Cattle Company, and duly acknowledged, of which the following is a true copy: 'Rayner Cattle Co. to Ed. W. Bedford. The State of Missouri, City of St. Louis. Quit-claim deed. Know all men by these presents, that the Rayner Cattle Company, duly incorporated under the laws of the State of Missouri, of the city of St. Louis, and State of Missouri, for and in consideration of the sum of one hundred and thirty-eight and $\frac{20}{100}$ dollars to them in hand paid by Ed. W. Bedford, of the County of Knox, and State of Texas, and the further consideration of five hundred and fifty-two $\frac{80}{100}$ dollars secured to be paid by his promissory note of even date herewith, bearing ten per cent interest per annum from date, due by the 24th day of July, 1894, and payable in four installments of $138.20 of the principal and all interest to those dates on the 24th day of July, 1891, 1892, 1893, and 1894, respectively, said payments being contained in four coupon notes attached thereto, and numbered from 1 to 4, inclusive, the receipt of which is hereby acknowledged, do by these presents, bargain, sell, release, and forever quit-claim unto the said Ed. W. Bedford, his heirs and assigns, all their right, title, and interest in and unto that certain tract or parcel of land lying in the County of Knox, and State of Texas, described as follows, to-wit: "One section, known as Section No. 90, Block 45, H. & T. C. R. R. Co., Martin Casey, original grantee, certificate No. 28/1851." But it is expressly stipulated and agreed that a vendor's lien is retained against the above-described property, premises, and improvements until the above-described note and all interest thereon is fully paid, when this deed shall become absolute. To have and to hold the said premises, together with all and singular the rights, privileges, and appurtenances to the same in any manner belonging, unto the said Ed. W. Bedford, his heirs and assigns, so that neither they, the said Rayner Cattle Company, nor any person or persons claiming under them, shall at any time hereafter have, claim, or demand any right or title to the aforesaid premises or appurtenances or any part thereof.'

"(3) I find: That about a month prior to the execution of the above-mentioned deed, the defendant saw W. E. Rayner, agent of the Rayner Cattle Company and said to him that he (Bedford) wanted to buy from said company the land described in said deed. That Rayner stated to him that he (Bedford) knew as much about the land as we (the Rayner Cattle Company). 'That you think you have the title, and we think we have.' That defendant replied, 'I know that I have no title, but I have possession, and want to buy the land.' That said Rayner replied that he would consider no verbal proposition for the purchase of the

land; for defendant to go home, and make a proposition in writing, and he would submit it to the company. That this defendant, a short time after, submitted a proposition in writing, and soon thereafter received in reply thereto the following letter, dated June 30, 1890: 'Ed. W. Bedford—Dear Sir: Yours of May 27th duly reached me yesterday. I will give you quit-claim deed for $691.20; one-fifth cash, balance 1, 2, 3, and 4 years, 10 per cent interest on deferred payments; we retaining lien to secure same; you to assume all amounts due the State. Yours truly, W. E. Rayner.' That defendant, in reply, wrote and mailed to said Rayner the following letter, of date July 11, 1890. 'W E. Rayner, Esq., Rayner, Texas—Dear Sir: Yours of June 30, to hand, and in reply will say that your proposition is fair, and I will accept same, provided this quit-claim deed you offer shows a chain of title from Martin Casey to Rayner Cattle Company. I would like for you to send deed properly signed up, and the notes for me to sign to some one here at Benjamin, if you are not expecting to be here soon yourself. Respectfully yours, Ed. W. Bedford.' That a few days thereafter Rayner wrote defendant that the deed and notes had been sent to bank at Haskell and for him to go there, and sign notes, and make first payment, and get the deed. This the defendant did and got deed above referred to, and signed the notes sued on, and paid to said bank in cash $138.20.

"(4) I find: That the section of land above described was State school land, and was on the 8th day of August, 1881, duly and legally classified and appraised by the surveyor of Baylor land district, together with 359 other school surveys in said county, the appraisement being made under the laws then in force. That the appraisement was duly presented to and approved by the Commissioners Court of Baylor County. That they certified to the same, and a copy was duly forwarded to the land office, and a copy filed with the surveyor, which copy filed with the surveyer under the head of 'Remarks,' in that part referring to D. & W. block No. 2, recited that it was in conflict with block 45, H. & T. C. R. R. Co. survey. That the commissioner of the general land office, on August 18, 1881, made on said appraisement and classification the following endorsement: 'Received, examined, and approved for 180 sections (one-half), the other (one-half) 180 sections being in conflict, and withheld from sale until the conflict is removed.' That on August 30, 1881, by due course of mail, said commissioner notified the surveyor of Baylor land district by letter of his action in reference thereto, which was duly received by said surveyor. That by said letter the said commissioner told the surveyor that block 2, D. & W. Ry. Co., and block 45, H. & T. C. Ry. Co., are reported as being in conflict, and, this being the case, all the surveys in said block must be withheld from sale, and that he must so mark them on his record, and that they could not be sold until the conflict was removed; and that no other appraisement of said block 45, H. & T. C. Ry. Co. survey was ever made.

"(5) That on December 26, 1882, one Martin Casey made his application in due form of law to purchase said section of land to the district surveyor of Baylor land district; that it was duly filed and recorded on said date by said surveyor; and that on March 13, 1883, said Casey tendered to the State treasurer, the sum of $32, being $\frac{1}{20}$ of the appraised value of said land, as the first payment therefor; that the State treasurer refused to receive same; that on January 7, 1887, said money was paid, and receipted for by said treasurer, as the first payment on said land; that the Commissioner of the General Land Office, with the consent of said Casey, endorsed on the receipt given by him that it was 'given subject to the decision of the court in the case now pending;' that no other fact with reference to a tender or payment of said money is shown by the land office records.

"(6) That prior to the execution and delivery of the deed by plaintiff to defendant Martin Casey, by quit-claim deed, duly executed and delivered, conveyed to plaintiff all his right and interest in said section of land.

"(7) That the survey herein referred to was in conflict with certain surveys in said block 2 of the D. & W. Ry. Co. surveys, at the time of the appraisement above referred to, and the conflict still exists.

"(8) That at the time of the delivery of the deed from plaintiff to defendant the defendant paid plaintiff in cash $138.20, and on September 16, 1891, paid plaintiff $193.48, being the coupon note due July 24, 1891, and has never paid any other sum.

"(9) That in the year 1887, the land herein referred to being unoccupied, one A. M. Horner moved on the land, and erected improvements thereon, and applied to purchase the same as school land under the law then in force; that the land was duly awarded to him, and his first payment received; that thereafter the treasurer refused to receive any further payments; that in 1888, by quit-claim deed, he conveyed to J. Rawdon said land; that in February, 1890, said Rawdon, by quit-claim deed, in consideration of $1,000, conveyed said land to defendant; that prior to the conveyance by Rawdon, to defendant the file of A. M. Horner, upon application of said Rawdon, was canceled, and the said money paid by said Horner was refunded to said Rawdon; that at the time of the conveyance by Rawdon to Bedford the improvements on the land were worth $1,000; that at the time of the purchase by defendant from plaintiff, defendant claimed no title to the said land.

"(10) That the plaintiff has never at any time been in possession of the said land, or any part thereof.

"(11) That in the fall of 1892 the State school sections in said block 2, D. & W. Ry. surveys, were duly classified and appraised, and placed upon the market for sale; that thereafter, in February of 1893, defendant purchased from the State section 16, block 2, D. & W. Ry. surveys, and has made all payments thereon required by law since said last-mentioned date, and that about one-half of section 90, block 45, H. & T. C. Ry. survey, is in conflict with said section 16, block 2, D. & W. Ry.

surveys, and the balance of said section 90, H. & T. C. Ry. survey, is in conflict with other surveys in said block 2, D. & W. Ry. surveys.

"(12) I find that on July 24, 1883, a suit was filed in Baylor County District Court by Adams & Leonard v. H. & T. C. Ry. Co. for all railroad surveys in said block 2, D. & W. Ry. Co. surveys, plaintiff claiming that they were in conflict with railroad surveys in block 45, H. & T. C. R. R. surveys, and that the D. & W. surveys had the superior title; that no one was a party to said suit except said Adams & Leonard and the H. & T. C. Ry. Co.; that said suit was pending until 1892, when judgment was rendered in favor of Adams & Leonard against said H. & T. C. Ry. Co. for all railroad sections in said block 2, D. & W. Ry. Co. surveys, which judgment is a subsisting and valid judgment between the parties thereto.

"(13) That the reasonable market value of the land in controversy was, on July 24, 1890, $2.25, without the improvements, and that the improvements thereon were of the value of $1000, said improvements being on section 16, block 2, D. & W. Ry. Co. block.

"(14) I find that on July 1, 1892, defendant, Bedford, became convinced that he had acquired no title to said section of land described in the conveyance set forth in conclusion of fact No. 2 herein by virtue of said conveyance, and that defendant, Bedford, believed until said time —July 1, 1892—that he had acquired a good and valid title to said land by virtue of said conveyance, subject to the incumbrance thereon mentioned, and also subject to the supposed amount due the State upon the said Martin Casey file.

"(15) I find that defendant, by his original answer, filed October 31, 1893, pleaded in reconvention, and sued for the sums of money paid by him to plaintiff, as hereinbefore found."

The learned District Judge, following the suggestions of our brothers of the Third District on a former appeal of this case (13 Texas Civ. App., 618), found as matter of law that the deed from appellant to appellee was not a quit-claim deed, but also found that the notes were without consideration, because the purchase by Martin Casey was void, and that neither he nor appellant acquired any title under that purchase; that limitation had not run against appellee's claim for the money paid to appellant, and gave judgment in favor of appellee for the sum so paid. We find it unnecessary to decide whether the deed was a quit-claim deed or not, but it seems to be in almost exactly the same language as the deed passed on by our Supreme Court in the case of Threadgill v. Bickerstaff, 87 Texas, 522, and held to be a quit-claim. See, also Richardson v. Levi, 67 Texas, 364; Lumber Co. v. Hancock, 70 Texas, 312; Shepard v. Hunsacker, 1 Posey. Unrep. Cas., 585; Smith v. Pollard, 19 Vt., 272.

But, whether it is a quit-claim deed or not, we are constrained to hold. under the rule laid down in Lamb v. James, 87 Texas, 490, that both the deed and the notes executed in consideration thereof are void, as being in contravention of the public policy of the State con-

cerning its unappropriated public domain; for in the case cited a general warranty deed even was condemned. · The land embraced within the lines of section 90, block 45, H. & T. C. R. R. Co., the claim and title to which were attempted to be conveyed, or quit-claimed and released, according as the deed would be construed, had been, at least as to one-half, prior to the location and survey of said No. 90, legally appropriated, by a valid certificate issued to the Dallas & Wichita Railroad Company, and designated as "Survey No. 16, block 2, D. & W. R. R. Co.," and, being an even number, the law set it apart to the State for public school purposes, while, perhaps, the other half of survey 90 was embraced in an odd-numbered survey, and belonged to Adams & Leonard, assignees of the D & W. R. R. Co. We think our Supreme Court, in the Lamb case, supra, settled the question that contracts of private persons concerning the unappropriated public school lands, while the title remains in the State, and when the grantor had not acquired a valid claim thereto in conformity with the law governing sales of such lands, are void, and that no rights in law or equity can be based thereon; and that, consequently, as the party assuming to sell or quit-claim any private title or interest therein could have had nothing to sell, and could have had no valid claim to release, the attempted conveyance, of whatever character, would be void, as against the public policy of the State, and therefore the notes executed for such a deed would be void also, for the want of a valid consideration.

In this case, however, we must assume that one-half of section 90, block 45, H. & T. C. R. R. Co., was not public domain, but had been segregated by a valid certificate of the D. & W. R. R. Co., and belonged to Adams & Leonard at the time survey No. 90 was made, because the record only shows that half of section 90 was embraced in section 16 of the D. &. W. R. R. Co. surveys, and the burden was on appellee, Bedford, to prove his plea of no consideration. If the deed to Bedford were purely a quit-claim, and all the land described therein belonged to a private individual, then the notes sued on might be valid and binding, for there is no public policy to prevent one person from releasing and quit-claiming all his interest, claims, and demands in and to the property of another private individual. But, where half the section is public domain and the other half not, what, then, is the rule? The deed executed by appellant shows that the section of land No. 90 was considered and contracted about as an entirety, and so was the consideration to be paid, to-wit, $691, although a part was paid in cash, and the balance divided into annual installments. It does not appear that the contract was based upon the number of acres contained in the section, nor was the sum to be paid based upon the value of the land by the acre. So that we conclude that the consideration for the notes was an entirety, and that the section was contracted about as an entirety. The contract as made by the parties being an entirety, we have no power to make it severable. If, therefore, it is void as to one-half the section, because it is contrary to and in violation of the State policy, which is but another name for law

it is void as to the whole. 1 Pars. Cont. (8th ed.), \*455, \*456. We therefore conclude that the appellant could not recover on the notes sued on, or, in other words, that the appellee's plea of failure of consideration was fully sustained by the evidence; and also that the appellee had the right to recover back the sums of money paid on the illegal and void contract, unless he was barred by the statute of limitation of two years, which is the statute applicable in this case, if any is.

On the question of limitation, we are of opinion that the appellee's demand and cause of·action to recover back the money paid was fully barred at the time he filed his plea in reconvention. His legal right to recover back his money existed from the moment he paid it, and his ignorance of his legal right to do so will not excuse him from filing his suit within the two years within which suits must be brought on open accounts for money had and received. There was no fraud or concealment of facts on the part of appellant pleaded or proved. The fact that appellee believed until July 1, 1892, that he· had acquired a good and valid title from appellant, did not prevent the statute from running against him. He was simply mistaken as to the law governing such cases, and no man can be heard to plead his ignorance of the law. Our opinion is that so much of the judgment in this case as awards a recovery in favor of appellee for the money paid to appellant should be reversed, and rendered so as to decree that appellee take nothing on his plea in reconvention for the sums paid to appellant, but that in all other respects the judgment ought to be affirmed, the costs of this appeal to be paid by appellee; and it is ordered accordingly.

*J. T. Montgomery*, for applicant [from petition for writ of error].— The Court of Civil Appeals erred in failing to hold that the deed from Rayner Cattle Co. was simply a quit-claim and release of the Rayner Cattle Company's claim or interest in the lands, and erred in holding that the character of said deed was immaterial. That the deed is a quit-claim is conclusively established by the case of Threadgill v. Bickerstaff, 87 Texas, 522. The deed then being a quit-claim, there was in fact no conveyance of the land itself from the Cattle Company to Bedford. The transaction was simply a release of the Cattle Company's interest, if any, in the land and therefore did not fall within the rule laid down by the Supreme Court in Lamb v. James, 87 Texas, 485.

The Court of Civil Appeals erred in holding that the transaction evidenced by the notes sued on and the deed from the Cattle Company to Bedford was in contravention of the public policy of the State and void. The Court of Civil Appeals bases its conclusion entirely upon the case of Lamb v. James, 87 Texas, 485. That case is but a new declaration, we take it, of the law as it has always existed in this State, and as decided in the several cases cited in support of the rule therein declared.

In our motion for a rehearing in the Court of Civil Appeals, we reviewed all the cases and attempted to show that they rested upon the ground of a total failure of consideration. We ask the court to exam-

ine the argument on said motion.   If then, the ground of the decision is a total want of consideration, that case is not of controlling influence in this; there was in the Lamb case an absolute conveyance with warranty of title of the land itself; in the case at bar, we have only a quit claim or release of the Company's title.   This release, irrespective of the question of title, was a good and sufficient consideration for the promissory notes.   McIntire v. Delong, 71 Texas, 89; Rhodes v. Alley, 27 Texas, 445.   Therefore the opinion cannot be supported in this case on the ground of a want of consideration.   In addition to the fact that the deed was a quit claim, there was a valuable consideration to support the promise, because the release carried with it the right to receive and recover back from the State the money which had been paid by Martin Casey as purchase money for the said land, to the State.   This was a valuable right and a sufficient consideration to support the contract.  If, therefore, the transaction is void, it is so not for want of a consideration, but because the court is of the opinion that in some way this contract is against the interest of the public, and is, therefore, void upon the ground of public policy.   Public policy, so far as we know, has never been defined.   It is a general term which means anything or nothing, according to the particular bias of the deciding court.  If it is law, it is unwritten.   It rests upon no legislative will.   It has been fitly characterized as an "unruly horse."   Richardson v. Mullish, 2 Bing., 229.   That courts should be very careful in setting aside contracts fairly made and which violate no law of God or man is certainly a sound proposition.   See, Richardson v. Mullish, 2 Bing., 229; Brockman v. Thompson, 25 Iowa, 487.   There must be some public interest to guard and protect, which is certain to suffer if the contracts are upheld.   In the Lamb case, James had, without title, taken possession of the public land, and thus prevented settlement; he had conveyed by a warranty deed, the land itself.

In the case at bar the Rayner Cattle Co. were never in possession; on the contrary the appellee was in possession, holding adversely.   The Cattle Co. and Bedford, in order to avoid litigation and trouble, agreed on a settlement.   Bedford was in possession, owning valuable improvements, holding adversely to the Cattle Co.   The Cattle Co. was, however, in good faith claiming an interest in the land.   Under these circumstances, when the rights of the parties were doubtful, they agreed upon a settlement.   This settlement did not involve a conveyance by the Cattle Co. of the land itself, but only a release of its claim.   It was in effect a compromise and as such ought to be favored and enforced.   It is, of itself, a valid consideration.   Cameron v. Thurmond, 56 Texas, 34; Little v. Allen, 56 Texas, 138; 1 Parsons, Contracts, 439.

It certainly is the policy of the State to encourage the adjustment of controversies by compromise.   And yet in this case, the Court of Civil Appeals, in effect says, that if two persons, each, claim the title to school land or claim the prior right to buy it, that the law will not permit them to adjust their controversy.   And if they, by a fair agree-

ment, compromise their differences, that this contract is void. They must, at every peril to their good name and fortune, litigate to the bitter end. This position is, to our minds, absurd, and we insist that the contract sued on is not void but valid and ought to be enforced.

The Court of Civil Appeals erred in holding that although one-half the land attempted to be released by the quit-claim deed was not public land but was private land, that yet the contract must be treated as an entirety and that it was not apportionable and that as the release or quit-claim deed included in part public school land, and in part private land, that therefore the entire instrument and the notes given in consideration therefor are void. The doctrine of entirety of contracts has never found much favor in Texas. Various contracts which were at common law held to be entire have in this State been declared apportionable, Meade v. Rutledge, 11 Texas, 47; Hassell v. Nutt, 14 Texas, 255; Nations v. Cudd, 22 Texas, 553; Carroll v. Welch, 26 Texas, 149. Indeed, in the absence of fraud, or where a contract is in part, at least, illegal, we have never found an entire contract in Texas. The doctrine is obsolete. If the sale of a certain tract of land is entire, then upon a partial failure of title, the vendee may keep what he has and refuse to pay. We believe that no one has ever contended that the sale of a tract of land was entire in the sense that a partial failure of title could be plead as a complete bar. The contrary view has been acted on in numerous cases. In this case the facts fail to show a failure of title as to 320 acres of land and yet the vendee is permitted to keep the land and refuse to pay anything. There can certainly not be two opinions as to the law on this statement of facts.

The court erred in refusing to sustain the seventh and twelfth assignments of error and erred in holding that the facts found by the court show that the appellant did not have title to the land referred to in its deed.

GAINES, CHIEF JUSTICE.—In refusing writ of error in this case we deem it expedient to say that it seems to us that the opinion of the Court of Civil Appeals proceeds upon a misapprehension of what was decided by this court in the case of Lamb v. James, 87 Texas, 485. There are expressions in the opinion in that case which indicate that the court were of opinion that the contract there under consideration was illegal as being against public policy and therefore void; but that the case was not decided on that theory is shown by the judgment which was therein rendered by this court. In the judgment Lamb was not only permitted to cancel the notes executed by him and Edwards to James, but was also allowed to recover the purchase money which had been paid by him. If the contract had been illegal the court would have left the parties where they left themselves, and while it would have cancelled the notes, it would not have permitted a recovery of the purchase money. Beer v. Landman, 88 Texas, 490. The gist of the ruling in the Lamb case was, that the vacant unappropriated public do-

main which was attempted to be sold by James to Lamb and Edwards, furnished no consideration for the contract. There is no statement of facts found in the record in the case before us, but we are of opinion that it appears from the conclusions of fact found by the trial judge that all the land for which the notes in controversy were given was, at the time of the purported sale, public domain, and that the case falls strictly within the rule laid down in Lamb v. James, supra.

The Court of Civil Appeals having reached a correct result in disposing of the case, the application for the writ of error is refused.

*Writ of error refused.*

## MAY, 1898.