**JONES et al. v. ALFORD et al.   (No. 1283.)**

(Court of Civil Appeals of Texas.   El Paso. Jan. 26, 1922.   Rehearing Granted in Part March 9, 1922.)

**1. Mines and minerals ☞58—Notwithstanding limitation by law as to sale of school land as to lessor's ownership in oil underlying land, lease held binding as to surface rights.**

Where the lessor's rights to oil and minerals underlying his land was limited under the law regulating sales of public school lands, and no binding contract could be made regarding the oil, gas, and other minerals, the surface of the land belonged to lessor, and was a proper subject for contract with lessee for "the purpose and with exclusive right of operating for oil thereon," and a lease was binding to that extent.

**2. Mines and minerals ☞59—Court held not justified in canceling lease of school land acquired by lessors under purchaser from state reserving minerals.**

When a lease of school land acquired under purchaser from the state reserving minerals was executed, the use of the surface was all that was necessary for lessors to convey or for lessees to acquire from them with respect to prospecting for oil, gas, and other minerals, and, in absence of a showing that lessee had not secured a prospecting permit under Vernon's Sayles' Ann. Civ. St. 1914, arts. 5904a, 5904b, 5904h, the court would not be justified in canceling the lease as to the surface.

**3. Mines and minerals ☞59—Lease of school land acquired from state held not affected by subsequent act so as to give right to have it declared void and canceled.**

Where, by virtue of the state's reservation of oil, gas, and other minerals in school lands acquired from it, a lease by the owners conveyed only the surface rights, Acts 36th Leg. (1919) 2d Called Sess. c. 81, relinquishing to the owners fifteen-sixteenths of the underlying minerals and making them agents for the state in disposing thereof, passed after execution of the lease, does not interfere with lessors in acting under the lease so as to entitle them to have it declared void and canceled, conceding that it does not attempt to convey any minerals.

Appeal from District Court, Brewster County; James Cornell, Judge.

Suit to cancel an oil lease by A. H. Jones and another against J. R. Alford and others. From judgment for defendants, plaintiffs appeal. Reformed and affirmed.

Mead & Metcalfe, of Marfa, for appellants.
H. D. Durst, of Ranger, and A. M. Turney, of Alpine, for appellees.

## Opinion.

HARPER, C. J. This suit was instituted by A. H. Jones and wife, appellants, against J. R. Alford, J. E. McCoy, and B. F. Van Camp, appellees, to cancel an oil and gas lease. Tried to the court without jury resulted in judgment for defendants; hence this appeal.

### Statement of the Case.

There is no statement of facts in the record. The trial court made and filed findings of facts, from which we take the following, believing them to be all that are pertinent to the question presented here.

The lease sought to be canceled reads (leaving out unimportant parts):

"The State of Texas, County of Brewster.

"Know all men by these presents: That A. H. Jones and his wife Bertie Jones, of the county of Brewster, Texas, * * * for and in consideration of the sum of one hundred and fifty

dollars, paid * * * do hereby lease, demise, and let unto Alma Gardner Brinkley of Coleman county, * * * the land hereinafter described, for the purpose and with the exclusive right of mining and operating for oil, gas and other minerals, thereon, together with the right to erect, maintain and use all buildings, structures, pipe lines, machinery and other things necessary or convenient for the production, storage, treatment and transportation of oil, gas and other minerals, and for housing and boarding employees; the said lands being situated in Brewster county, Texas, and described as follows: (Here follows description, containing 3,200 acres.)

"To have and to hold the said land and all rights granted hereunder to the said lessee, his heirs and assigns for the term of ten years from this date, and so long thereafter as oil, gas and any other mineral is produced therefrom, or royalties paid hereunder, or as long thereafter as lessee, in good faith, shall conduct drilling or mining operations thereon, with the right, if such operations result in production, to continue this lease as long as oil, gas or other minerals shall be produced."

Other terms and conditions of this lease are as follows:

First. Provides for one-eighth of all oil produced to be delivered or paid for to lessor.

Second. Provides for the gas produced.

Third. Provides for the use of oil and gas for operations and ingress and egress for transportation, pipe lines, etc.

Fourth. If no well is produced before March 7, 1920, lease to terminate unless the lessee shall pay $160, which shall operate to defer commencement of a well for one year.

Fifth. Lessor agrees that the cash payment received by him from the lease * * * constitutes a sufficient and valid consideration for the rights conferred.

Sixth. Provides for drilling offset well if a producing well be drilled within a hundred feet of any line of the premises leased.

Seventh. Fixes place of payment, etc.

Eighth. Warranty of title, etc.

Ninth. No forfeiture after discovery of oil, etc., except on named conditions.

Tenth. Other mineral provided for.

Eleventh. Right to remove machinery, etc.

Twelfth. Protects lessees in case of rebellion, flood, etc.

Thirteenth. Lease may be assigned in whole or in part.

"Dated March 8th, 1919. [Signed] A. H. Jones. Bertie Jones"—and duly acknowledged.

The court then finds as facts:

That the cash was paid at the time of making deed.

That plaintiff at the time of executing the lease was the owner of the land.

That the land was acquired under purchase from the state of Texas, and awarded under the provisions of law regulating the sales of public school lands, with the specific reservations to the state of all minerals including oil and gas, and that the plaintiff at the date of the lease had no right, title, or interest in said minerals on said lands.

"(6) That up to the date of the filing of plaintiff's original petition, that is, on July 10, 1920, upon which this cause of action proceeded to trial, the lessees and assignees of the lessee had complied with all obligations evidenced by said instrument as to the making of payments.

"(7) That no operations whatever were begun under said instrument, but that the lessees and assignees tendered full performance as to payments excusing the beginning of operations under said lease, as provided for in the instrument set out in the first finding.

"(8) That the original lessee named in the instrument set out in the first finding, at the time of the delivery of the said instrument to him, and at the time of the acceptance of the same by him, knew that plaintiff's title was acquired and was held as set out in finding number five.

"(9) That the plaintiffs refused to accept the money which was tendered into the Marathon State Bank, for a renewal of the lease, except the sum of $96, which was tendered and paid in by the defendant B. T. Van Camp. As to this item, I find, as alleged in the plaintiffs' original petition, that the plaintiffs, ignorantly and by inadvertence, checked said money and used it, but soon afterwards, upon discovering the facts, tendered the money back to the said B. T. Van Camp, but that said defendant never accepted it. I find that said money is tendered in the petition to the said defendant in case the lease is canceled."

The grounds alleged in plaintiffs' petition for cancellation of this lease are, as stated by them, in their brief:

"That at the date of said lease said lands were what is known as public school lands and before said lands were sold and awarded they had been classified as mineral and grazing lands, and were sold with the specific reservation to the state of all minerals, including the oil and gas in said lands, and by reason of said facts, said lease contract passed no title or interest in said minerals and was void; that the original lessee transferred and assigned all the interest in said lease, and now claims no interest in same and the defendants are assignees, claiming under said lease; that no operations have been commenced under said lease; that since the date of said lease, the Legislature passed an act releasing to the surface owner of all school lands fifteen-sixteenths of all oil and gas in said lands and making such surface owners the agents of the state to lease under the conditions named in the act; that the lease creates a cloud on the lands and prevents a proper and legal lease from being made under its provisions."

The defendants answered by general denial and specially plead that they were assignees under the lease, and set up the warranty of title to the minerals contained in the written assignments, and asked that these assignors be made parties as to the consideration paid.

[1] Appellants' propositions track their pleading. That the lease in question was void and should have been canceled because at the date thereof the oil, gas, and other

minerals covered by said lease belonged wholly to the public free school fund of the state, was public property, and therefore appellant had no right, title, or interest in same, and had no right to traffic in said public property.

True the oil, gas, and other minerals were public property, and the parties could not make a binding contract concerning them. Lamb v. James, 87 Tex. 485, 29 S. W. 647; Cattle Co. v. Bedford, 91 Tex. 642, 44 S. W. 410, 45 S. W. 554. But the surface of the land was the private property of plaintiffs and was a proper subject for contract between the parties, and, by the instrument above quoted, the plaintiffs "lease, demise and let * * * the land hereinafter described, for the purpose and with the exclusive right of mining and operating for oil, gas and other minerals thereon, etc.," and further grants the right to "ingress and egress" for said purposes. To this extent at least it is a legal and binding contract.

[2] At the time this lease was executed, the use of the surface of the land was all that was necessary for plaintiffs to convey or defendants acquire from them with respect to prospecting for oil, gas, and other minerals. Article 5904h, Vernon's Sayles' Ann. Civ. St. 1914, and articles 5904a and 5904b, provide the way for any person to secure a permit from the state to prospect for such minerals, and, so far as this record discloses, the defendants may have the necessary permit from the state under the statutes. Without such showing the court would not be justified in canceling the lease of the surface.

[3] But again appellants urge that subsequent to the execution of this lease the Legislature of Texas, 36th Leg. 2d Called Session, c. 81, by an act relinquished to the owner of the soil fifteen-sixteenths of all oil and gas upon or within the same and in addition constitutes the owner the agent of the state to sell or lease such oil and gas as may be thereon or therein upon such terms as the owner may deem best, subject only to the provisions of the act, etc. That a proper and legal lease could not be made by virtue of the provisions of this act by appellants as owners of the soil with this lease outstanding, and for that reason the lease should be held to be void and canceled.

If, as we hold, and as contended by appellants, the lease in question does not attempt to convey any minerals, we fail to see how this act would in any way interfere with appellants in acting under it. Appellees certainly would not care to keep their lease of the surface alive by annual payments without having the necessary right to produce oil and gas, and we are not advised, as before stated, whether appellees have such permit or not.

If appellees have not acquired such permit and some other person than appellees should apply to appellants as agents to purchase or lease the lands under the last act of the Legislature, we would have a more serious question; but it is not presented at this time, and we express no opinion concerning it.

Affirmed.

### On Rehearing.

We held in the original opinion that an attempt to convey public property was void, and that the minerals under the lands leased belonged to the state. Now, appellant urges that to this extent the decree of the trial court should be rendered. We have concluded that the point is well taken and it is so ordered.

The judgment of the trial court is therefore to this effect reformed, and as reformed affirmed.

# MEMORANDUM DECISIONS