SAMUEL K. McCLELLAND, ADM'R, v. JOHN L. MOORE.

1. DEATH OF PARTIES.—A judgment rendered where both plaintiff and defendant are dead is erroneous.

2. SUGGESTION OF DEATH—CORRECTION OF MINUTES.—A suggestion of death of a party, made and entered upon the judge's docket, may furnish the basis for amendment of the record of a judgment where the suggestion of death and appearance of personal representative was not carried into the minutes; and such correction would be proper.

3. PRACTICE.—Where the parties are dead at the rendition of the judgment, and the record does not show the fact, relief can only be had by petition, in nature of bill of review, or for a new trial, or by motion to set aside the judgment.

4. CASE APPROVED.—Milam County v. Robertson, 47 Tex., 222.

5. LAND-OFFICE COPIES OF PATENTS.—Such copies, by statute, are made evidence, and are admissible as secondary evidence, on proper showing of absence of the patent.

6. BREACH OF WARRANTY—MEASURE OF DAMAGES.—The measure of damages on a breach of warranty of title to land, where the purchaser has voluntarily removed the incumbrance, or acquired the paramount title, is limited to the amount reasonably paid for that purpose.

APPEAL from Shelby. Tried below before the Hon. A. J. Booty.

September 15, 1866, S. K. McClelland, as administrator of the estate of Zachariah Hinton, sued John L. Moore for one thousand dollars, balance unpaid of the purchase-money for 913 acres of land sold defendant by plaintiff's intestate.

March 12, 1867, defendant pleaded in reconvention a breach of the warranty of title in the deed made by Hinton to defendant, in that, at the time of the sale, 203 acres of the tract sold was vacant land, and that to secure it defendant had located and procured a patent for it, the value of which was greater than the amount sued for, &c.

July 7, 1874, the case was tried, and a verdict rendered for plaintiff for "one thousand dollars, less three hundred dollars allowed for saving said land."

· Upon this verdict, judgment was rendered. A motion by defendant for new trial was overruled, and defendant Moore gave notice of appeal.

The appeal was dismissed for want of an assignment of error.

March 17, 1875, N. S. Moore, as executor of John L. Moore, the defendant, filed a petition for writ of error. In the petition, it was alleged that John W. Hinton was administrator de bonis non of the estate of Z. Hinton. An assignment of errors was filed with the petition. A cost bond was filed and approved 3d of May, 1875.

July 14, 1875, N. S. Moore filed a motion in the District Court to amend and set aside the judgment of July 7, 1874, alleging that the defendant John L. Moore departed this life December 11, 1873, while the suit was pending, leaving a will, which was duly admitted to probate; that under said will, the said N. S. Moore, December 29, 1873, qualified as executor, and that he, as executor, had never been made a party to the suit.

That S. K. McClelland, the original plaintiff, had also died, and that in March, 1871, John W. Hinton had been appoint-

ed administrator *de bonis non* of the estate of Z. Hinton, but was never made a party plaintiff to the suit.

Wherefore, it was insisted, the judgment was void for want of parties. The motion was accompanied by affidavits showing the facts alleged.

July 22, John W. Hinton, administrator *de bonis non* of Z. Hinton, excepted to the sufficiency of the motion to set aside the judgment, and denied the facts alleged therein.

November 5, 1875, N. S. Moore, administrator in the District Court, filed a dismissal or abandonment of his writ of error.

On same day, John W. Hinton pleaded in defense, against the motion, that the writ of error had been perfected, and the jurisdiction of the Supreme Court over the matter; also alleged that the death of J. L. Moore, the original defendant, had been, in 1874, suggested, and the entry made on the judge's docket, with leave to make himself a party defendant; and that N. S. Moore, as administrator of the defendant, and John W. Hinton, as plaintiff, were present in court on the trial, actively aiding as parties, employing lawyers, &c., in the case. He also asked that the judgment of July 7, 1874, be amended by the judge's docket, and in accordance with the facts as to the parties.

November 6, 1875, the court submitted the facts controverted in the motion to a jury, and, by the verdict, it was ascertained that S. K. McClelland, the plaintiff, was dead at the rendition of the judgment; that the defendant Moore was also dead; that John W. Hinton was administrator *de bonis non* of the estate of Z. Hinton; that said John W. Hinton was present, acting and participating, in the manner of a plaintiff, at the trial; that N. S. Moore was administrator of J. L. Moore, the defendant; that N. S. Moore suggested the death of defendant, and asked to be made party, which suggestion was entered on the judge's docket, but was not carried into the minutes.

Upon this verdict, the court set aside the judgment of July 7, 1874.

November 6, 1875, death of plaintiff McClelland suggested, and John W. Hinton, administrator *de bonis non,* was made a party plaintiff. The death of John L. Moore, defendant, was suggested, and N. S. Moore, executor, was made party defendant.

The parties amended their pleadings, and the cause was tried at January Term, 1877, by the court, without the intervention of a jury.

The facts in evidence were, substantially, that Z. Hinton sold J. L. Moore, by warranty deed, 913 acres of land, described in the deed, for four thousand dollars, of which one thousand remained unpaid; that 203 acres of the land were located by a certificate in name of J. L. Rounds, and that the field-notes and certificate were not returned to the General Land Office, as required by law, and that Moore relocated and obtained a patent therefor; that the 203 acres were worth five dollars per acre—double the value of any other like quantity of the tract sold; that Moore entered into possession under the deed, and was never dispossessed.

There were objections taken to a land-office copy of the patent introduced by defendant, affidavit having been made that he could not produce the original.

The court rendered judgment for the defendant. Motion for new trial was overruled, and the plaintiff appealed.

The errors assigned sufficiently appear by the opinion.

*A. M. Carter,* for appellant.— The District Court should have corrected and amended the judgment rendered on the 7th of July, 1874. (Swift *v.* Faris, 11 Tex., 19; Frosch *v.* Schlumpf, 2 Tex., 422; Richardson *v.* Ellett, 10 Tex., 191; Trammell *v.* Trammell, 25 Tex. Supp., 261; Bank *v.* Seymour, 14 Johns., 219.) In New York, the omission from a decree of any matter which, if applied for on the hearing, would have been granted as a matter of course, " as neces-

sary and proper" to carry into effect the decision of the court, will be supplied on motion. (Gardner *v.* Dering, 2 Edw. Ch., 131; Ray *v.* Connor, 3 Edw. Ch., 478; Rogers *v.* Rogers, 1 Paige Ch., 188.)

In such case, the omission will be corrected by a distinct order, without making any change upon the decree. (Clark *v.* Hall, 7 Paige Ch., 382; Sprague *v.* Jones, 9 Paige Ch., 395.)

Nicholas S. Moore's motion should not have prevailed, because he had had an opportunity to defend his testator's cause, and did in fact defend the cause, was in court, had counsel, &c.; and the party asking that a judgment be vacated must show merits and want of laches; (Freeman on Judgments, sec. 102;) and by appealing the cause he waived the irregularity. (Jenkins *v.* Esterly, 24 Wis., 340.)

After a mandate, no rehearing has ever been granted in the House of Lords. (Burnas *v.* Donegan, 3 Dow. P. C., 157.) And on a subsequent appeal, nothing is brought up but the proceedings subsequent to the mandate. (Himely *v.* Rose, 5 Cr., 316; Browder *v.* M'Arthur, 7 Wheat., 58, 59; The Santa Maria, 10 Wheat., 443; Chambers *v.* Hodges, 3 Tex., 520.)

It is too plain for any argument, that the certified copy of the patent was improperly admitted in evidence. (Paschal's Dig., art. 3716.) The loss of the original was never established. There was no proof that there ever was any patent to the land in controversy in existence.

We do not think the District Court had jurisdiction to render the judgment it did render on the 5th of November, 1875, because the matters were then properly cognizable by our Supreme Court, as Nicholas S. Moore had filed his petition for writ of error, and had given bond and assigned errors, and Z. Hinton's administrator had accepted service of said petition in error.

It is true, that after the writ of error was thus perfected, the plaintiff in error endeavored to dismiss the writ of error

in the Supreme Court, by applying to the District Court.
The Supreme Court could award cost in dismissing plain-
tiff's writ of error, but the District Court could not do
either; but by the final judgment, rendered on the 20th day
of March, 1877, compels appellant to pay all " cost due the
officers of court in this suit expended." Now, can this judg-
ment be supported by law or equity ? . Certainly not.   *   *

*Drury Field,* for appellee.——The action of the court, in
granting a new trial, is sanctioned by the practice of the
courts of this State, and so well settled and approved by the
decisions of this court as not now to be considered an open
question.   (McKean *v.* Ziller, 9 Tex., 59; Gross *v.* McClaran,
8 Tex., 341; Goss *v.* McClaren, 17 Tex., 120; Caperton *v.*
Wanslow, 18 Tex., 132; Davis *v.* Terry, 33 Tex., 426; Seguin
*v.* Maverick, 24 Tex., 537.)   On authority of the cases above
cited, the judgment of the court, on the application for a new
trial, is amply sustained.   And it is urged that the court hav-
ing given judgment on the application for new trial, every
presumption obtains in favor of the correctness of its action
in the premises.   (Withers *v.* Patterson, 27 Tex., 494, 502.)

Under a recent decision of this court, it was held, that the
presumptions that obtain to support the finding of a jury will
apply to the judgment of the court deciding the issues of
facts.   (Rich *v.* Ferguson, 45 Tex., 396.)

MOORE, ASSOCIATE JUSTICE.——The judgment in this case of
the 7th of July, 1874, was unquestionably erroneous.   Both
plaintiff and defendant were dead when the judgment was
rendered.   The death of the defendant had been suggested,
and the court had granted leave to his executor to enter him-
self as a party.   But this order had not been carried into the
minutes of the court.   The error of the judgment, for want
of a party defendant against whom judgment could be ren-
dered, was owing to a mere defect in the record.   It might,
unquestionably, have been obviated by the correction of the

record by the notes of the judge on his docket, which show that the death of the original defendant, John L. Moore, had been suggested, and that leave was given to Nicholas S. Moore, his executor, to make himself a defendant to the action in his stead. But the defect in the judgment, for want of a plaintiff, cannot be so easily remedied. The error, in this particular, does not result from a mere defect in the record, but from the failure of the administrator *de bonis non* of Zachariah Hinton, deceased, in whose right the action was brought, to make himself a party to the suit. He certainly did not do so by his presence in the court, and by assisting counsel for the plaintiff, by suggestions or otherwise, during the progress of the trial.

The error in the judgment, however, is not exhibited by the record. It is an error in fact, and not in law. It could not, therefore, be corrected, under our system of judicature, on appeal or writ of error to this court. Relief must be sought in such case by a petition in the nature of a bill of review, or for a new trial, or by a motion in the court in which it is rendered, to set aside the judgment; which seems to have been recognized by this court, in cases of this kind, as a substitute in modern practice for writ of error *coram nobis.* (Milam County *v.* Robertson, 47 Tex., 222, and cases cited.)

The court did not err in admitting in evidence the certified copy from the General Land Office of the patent to Daniel Hopkins. If we look merely to the statutes establishing and organizing the General Land Office, and to such of their provisions as prescribe the duties of the commissioner, we think there can be but little hesitancy in concluding that it is not only proper, but absolutely essential, in conducting the business of the office, to keep a record of patents issuing from it. But we are not left to inference or deduction in arriving at this conclusion. So important is this matter deemed, that it has been provided in every Constitution adopted by the people of the State, from 1845 to the present time, that "all titles which have heretofore emanated, or may hereafter em-

anate, from the government, shall be registered in the General Land Office." The registry of said titles, when made, is unquestionably a record of the office. It is, we think, too plain for argument, that a certified copy by the commissioner of a patent thus registered in said office is admissible as secondary evidence of the contents of the patent, where a proper predicate for the admission of secondary evidence has been laid. (Paschal's Dig., art. 3715.)

The only remaining question which it is necessary for us to consider is,—Did the evidence before the court warrant its judgment? We are clearly of the opinion that it did not.

On the 13th of August, 1859, Zachariah Hinton, appellant's testator, in consideration of the sum of $5,000, sold to John L. Moore 913 acres of land, and executed to Moore a deed, with covenant of general warranty. Moore, it seems, went at once into possession of the land, and he and his executor have been in possession of it from the date of said deed to the present time, and have never been evicted, hindered, or disturbed in their possession, use, or enjoyment of it.

On the 15th of September, 1866, Samuel K. McClelland, the administrator of Hinton, brought suit against Moore for the sum of $1,000 purchase-money for said land, still unpaid. That this amount of the stipulated price which Moore agreed to pay for the land had not been paid, is not controverted. The defendant Moore, however, set up in his answer a cross-demand for damages sustained by a breach in the covenant of warranty in Hinton's deed, by the failure of his title to 203 acres of the land sold him, the value of which, he avers, is more than the amount for which he was sued, estimating it at the proportional price agreed to be paid for the entire tract.

The testimony shows that the 203 acres of land in question had been located and surveyed by virtue of a genuine land certificate, long before its sale to Moore. But it is not shown how or by what title Hinton held or claimed it. The

certificate by virtue of which the land was surveyed, was not returned to the General Land Office by the 29th of July, 1872. The survey was therefore forfeited. Moore, after it became subject to reappropriation, had it located and surveyed by virtue of a certificate belonging to him, and subsequently obtained a patent for it.

The evidence in support of appellee's answer clearly establishes a breach of the covenant of warranty in Hinton's deed. The only question is as to the amount of damages to which the appellee was entitled by reason of this breach. The judge who tried the case supposed him entitled to such part of the contract price of the entire land as the part for which the vendor's title failed was worth, in proportion to the entire tract. This, no doubt, is the correct rule, if the purchaser had been evicted or lost the land. (Field's Law of Damages, 394.) But the essential nature of the contract of warranty plainly indicates that it is not the rule by which the damages are to be measured in such a case as this, and in the absence of fraud on the part of the vendor. The nature and purpose of such a covenant is for the indemnity of the purchaser against the loss or injury he may sustain by a failure or defect in the vendor's title.

While there has been much difference of opinion in the courts of different States as to what is the proper measure or extent of this indemnity where the purchaser has been evicted, or yielded possession to a superior title, there seems to be little if any difference among them, where the purchaser has voluntarily removed the incumbrance or acquired the paramount title. "In such case," says Rawle on Covenant for Title, 100, "his damages are of course limited to the amount reasonably paid for that purpose." And Field, in his recent work on The Law of Damages, 396, says: "When the covenantee purchases the paramount title, the measure of damages is the actual loss thereby sustained; and it is incumbent on the purchaser, in order to recover more than nominal damages, to prove the amount paid by him to extinguish the

paramount title." Some courts have gone so far as to hold that he must also show that the amount paid was the reasonable value of the interest acquired, and that it cannot be assumed to be reasonable from the bare fact of payment. (Anderson *v.* Knox, 20 Ala., 160.)

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Chief Justice ROBERTS did not sit in this case.]