A. C. Williams et al v. J. M. Finley et al.

No. 1500.    Decided February 12, 1906.

**1.—Sale of Land—Purchase Money—Consideration—Total Failure.**

The principle that upon a sale by individuals of land belonging to the State there is a total want of consideration, and that the vendee may acquire title from the State, have cancellation of his purchase money notes, and recover back the purchase money paid, does not apply to a sale which passed to the vendee the possession and valuable improvements placed upon the land on faith of a patent from the State, which it afterwards had cancelled because the same was school land and not subject to location and patent.    (Pp. 471, 472.)

**2.—Same—Cases Distinguished.**

The right to compensation for improvements made in good faith was an equitable claim constituting some consideration passing by the sale; the fact that the State was the adverse owner and might give or refuse recognition of such right affected the remedy of such equitable claimant, but not the existence of his right.    Lamb v. James, 87 Texas, 485, Raynor Cattle Co. v. Bedford, 91 Texas, 642, and similar cases distinguished.    (P. 472.)

**3.—Consideration—Partial Failure.**

Where parts of two adjoining surveys, one owned by the vendor and the other belonging to the State, were sold together, there could not be said to be a total want of consideration for the notes given for the purchase money of both tracts.    (Pp. 472, 473.)

**4.—Sale of State Land—Contract—Public Policy.**

The mere fact that land sold in good faith by one claiming title belonged in fact to the State does not of itself render the contract void as one against public policy. (P. 473.)

**5.—Vendor and Vendee—Purchaser Acquiring Outstanding Title—Adjustment of Rights.**

A vendee who, buying from another improved land afterwards ascertained to belong to the State school fund, acquires title by purchasing from the State as an actual settler, with deferred payments and obligation to continue to occupy it for three years, can not be subjected to foreclosure for the unpaid notes given on his first purchase less the cost of acquiring title from the State before the occupancy required by the State is completed and he is in a position to acquire title by the mere payment of such sum. The vendor's only remedy during such time is judgment for the value of the improvements, without foreclosure of his lien, since that, by sale, would disturb the contract of his vendee with the State. (Pp. 474, 475.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Eastland County.

Finley sued Williams and others for recovery and foreclosure on purchase money notes. He had judgment after allowing for the expense of vendees in acquiring an outstanding title of the state. This was affirmed on appeal by defendant, who thereupon obtained writ of error.

*Scott & Brelsford* and *Earl Conner,* for plaintiffs in error.—Where title to land attempted to be conveyed by deed has never been divested from the state, the grantee is entitled to have notes given as part of the purchase price, in the hands of the original vendor, cancelled. Lamb v. James, 87 Texas, 485; Rayner Cattle Co. v. Bedford, 44 S. W. Rep., 410.

Where title to land attempted to be conveyed by warranty deed has never been divested from the state, the grantee is entitled to recover from the grantor the full consideration paid, though the grantee subsequently acquired the title by purchase from the state. Same authorities.

The law having appropriated the land in controversy to the state school fund, by virtue of the prior survey made under a valid certificate, and which required alternate sections to be surveyed for the public free school fund, no ministerial act upon the part of the officials of the State of Texas, could divest title from the school fund and reinvest title in the junior location; and the patent erroneously issued to T. W. Folts, assignee, was an absolute nullity; and in an action by a vendor to foreclose purchase money notes on land, the title to which is in the state, it is only necessary for the payee to show outstanding title in the state. Sherwood v. Fleming, 25 Texas Supp., 408.

*D. G. Hunt* and *J. R. Stubblefield,* for defendants in error.—Where the vendee is in possession of the land under the title which he acquired with the warranty and is in no way disturbed by any other title, he can not resist the payment of purchase money notes on the supposition that there is another title, and, in fact, there may be a superior title outstand-

ing; yet so long as his possession remains undisputed, he can not resist payment. 72 Texas, 435; 80 Texas, 240; 19 Texas, 267; 51 S. W. Rep., 258.

A patent to land issued by virtue of a junior location is not void, but is only voidable at the instance of the state or some one holding under or connected with the prior equitable title. 6 Texas, 370; 28 Texas, 145; 53 Texas, 459; 26 Texas, 241; 54 Texas, 416.

Where land, the title to which has never been divested from the state, is attempted to be conveyed by deed for a consideration of cash paid and vendor lien notes, and all the parties to the said contract in good faith believe, and have good reason to believe, at the time of making the same, that the title to the said land is perfect in the vendor, and that the said land is patented, and the vendee goes into possession of the same, and receives and appropriates to his own use and benefit valuable improvements thereon, the vendee can not defeat the payment of the purchase money notes and recover back the amount of the cash paid as a part of the consideration by showing an outstanding title in the state, except for the amount which is expended by the vendee in the purchase of the outstanding title from the state. Johnson v. Blum, 28 Texas Civ. App., 10.

WILLIAMS, Associate Justice.—Finley, one of the defendants in error brought this action against H. T. Armstrong, A. C. Williams and Mrs. A. C. Williams, to recover of the two first named defendants the amount due on four promissory notes for $210 each, besides interest and stipulated attorneys' fees, executed to plaintiff by Armstrong, for part of the purchase price of land conveyed by the former to the latter, and subsequently conveyed by the latter to Williams, who assumed payment of the notes, and to foreclose a lien reserved in the notes and deed to secure the promised payments.

The defendants pleaded that the consideration for the notes had wholly failed in that no title passed from plaintiff to Armstrong, or from Armstrong to Williams; and they sought, in reconvention, the recovery of sums already paid upon the purchase and the cancellation of the notes. The plaintiff also made one Gilbert, from whom he had bought this land, a party, and sought to charge him on his warranty if the title should be held to have failed. Judgment was rendered for plaintiff for the amount of the notes, after allowing, as a credit, the sum which it cost Williams to procure title to the land sold; for which latter sum judgment was rendered in favor of plaintiff against his warrantor, Gilbert; and from the affirmance of that judgment by the Court of Civil Appeals this writ of error is prosecuted by Williams and wife.

The question about the title grows out of conflicting locations. The earliest location was made in 1878 of two sections, 1 and 2, by virtue of certificate No. 113, issued to the Memphis, El Paso and Pacific Railway Company, and, legally, section 2 became, by virtue of this location, a part of the state's school fund. For some reason, not fully explained, this fact was not known, or was ignored in the land office until 1903, and a junior location, also made in 1878, upon the same land, by virtue of certificate No. 230, issued to the International & Great Northern Rail-

road Company, was recognized as good, and upon it a patent was issued in 1880. By regular chain of transfer Finley became the owner of this title, and, on July 31, 1900, was in possession of the land in controversy and had upon it permanent improvements of the value of $1,000. He also owned and possessed two acres adjoining in another survey which, with improvements on them, were of the value of $31. At the date last named, Finley, by warranty deed, conveyed the two acres and the 300 acres, the title to which is in controversy, to Armstrong for $1,950, for which the latter gave the notes sued on, with two others which have been paid. Armstrong took and held possession of the land with the improvements under this conveyance, until July 27, 1901, when he conveyed the same to Williams for a consideration of $2,500, which included the unpaid notes held by Finley and assumed by Williams. Under this conveyance Williams took and held possession until his purchase from the state hereinafter stated. In 1903 the Commissioner of the Land Office cancelled the patent to the International & Great Northern Railroad Company, declared section 2 of the Memphis, El Paso and Pacific Railway Company location to be public school land, and appraised and put it on the market for sale. In the same year Williams, as an actual settler, bought the 300 acres in question from the state for $300, or $1.00 per acre, upon the terms and conditions prescribed by the statute. (Acts 1901, p. 293.) It is admitted that the dealings of all parties with the land under this patent were conducted in good faith and under the belief that that title was perfect, which opinion the officers of the state seem to have shared when the patent was issued and for a long time afterwards.

The contention of plaintiffs in error is that, as no title to the 300 acres passed by the conveyance from Finley to Armstrong, there was a total absence of consideration for so much of the notes as represented the price of that tract; and that, since the title was in the state, under the law as laid down in Lamb v. James, 87 Texas, 485, and Raynor Cattle Company v. Bedford, 91 Texas, 642, the relation of vendor and vendee did not arise; and that there is therefore no basis for the operation of the general rule, applying between warrantor and warrantee, which limits the right of the latter in such cases to the recovery of such sum as he was required to pay in order to procure the paramount title.

The decisions referred to, as explained in the opinion of the last one cited, were based upon the proposition that there was no consideration at all for the conveyance there in question, the vendors not having titles to the land, nor any other right which passed by the deeds. They had neither improvements on the land nor possession of it. The only claim of the vendor to the land in each case was asserted under a pretended purchase from the state which was utterly void in law, or at least was so treated in the decisions. From these facts the conclusion was reached that the contract, of which the deed was a part, was a *nudum pactum*, and without effect to establish the relation of vendor and vendee. The facts of this case are materially different.

We should have to ignore plain and undisputed facts to hold there was no consideration for the purchase from Finley. A large part of the value for which the notes were given was added to the land by the improvements in good faith made by him and his vendors. To compensation for

such addition he would have been entitled in equity and good conscience from any owner who took from him the possession.     Pom. Eq. Jur., 1241; 1 Story Eq., 394, 2 Id., 129.     That the owner was the state may have affected his remedies but did not make his right any the less.     It may be that in a contest with the state the courts could not have given him relief in the absence of legislative authority (Snyder v. The State, 66 Texas, 687), but whether so or not, his right in equity to compensation from the state was as complete as it would have been had the owner been a natural person; and it should be presumed that the state, had it seen fit to assume actual possession of the land with its value thus increased by the labor of its citizen, would have given him, in some appropriate way, the relief to which he would in justice have been entitled.     That the rights of the citizen can not be enforced against the sovereign by its court without its consent may be true, but this does not justify the assumption that the rights do not exist nor that they will not be recognized and satisfied. Williams v. Heard, 140 U. S., 542; Comegys v. Vasse, 1 Pet., 216; Stanley v. Schwalby, 147 U. S., 517.

In selling her school lands, the state has never manifested a disposition to deprive persons who had improved and sought to purchase them of the value of their improvements, but has sold only the land at its own value, and Finley in all probability could, by buying that in question, have secured to himself the value which he and his vendors have added to it, had he remained in possession until it was finally offered for sale. His deed passed his improvements and possession to Armstrong, whose deeds passed them to Williams; and the latter in his subsequent purchase of the land at its unimproved value from the state, was thus enabled to and did exercise all the rights which had belonged to the plaintiff. He thus obtained and now enjoys the enhanced value given to the land by the improvements made by those under whom he took possession, which, as we have said, constituted a large part of the consideration in both sales.     Had Williams, instead of buying from the state, remained in possession under the title derived from plaintiff alone, and been sued for the land by another who had bought from the state, undoubtedly he would have been protected to the extent of the value, at the time of trial, of the improvements which were on the land when plaintiff sold. Had he then sued plaintiff on the warranty he would have been compelled to allow as a credit the amount thus secured by virtue of the conveyance from plaintiff.     Booker v. Bell, 6 Am. Dec., 641; Mason v. Kellogg, 38 Mich., 132; Drury v. Shumway, 1 Am. Dec., 704; McKinny v. Watts, 3 A. K. Marsh, 268; Park v. Check, 4 Cold., 20; Hartford & Salisbury, etc., Co. v. Miller, 41 Conn., 112.     The case is therefore different from those relied on in the fundamental fact that the contracts of sale were not wholly without consideration.

This is true for another reason.     The title to the two acre tract was a part of the consideration for the notes and it passed by the deed. The fact, therefore, that the vendor had no title to the other tract does not establish a total absence of consideration, but shows, at most, only that the purchaser did not get the whole consideration contracted for. Under such a state of facts, with a deed passing to and vesting in the purchaser title to a part of that which was contracted for, how could it

be said, without doing violence to the facts, that there was no consideration?

Because of some expressions in the opinion in Lamb v. James, it is urged that the fact that the 300 acre tract belonged to the state prevents the application of the ordinary rule obtaining under such circumstances between warrantor and warrantee. In the opinion in Raynor Cattle Company v. Bedford, delivered while the eminent judge who wrote that in Lamb v. James was still a member of this court, the true reason for the former holding is stated to have been the total absence of consideration. In McClelland v. Moore, 48 Texas, 355, the warranty deed purported to convey land a part of which proved to be a part of the public domain. The title to this was afterwards acquired by the vendee through the location of a certificate and a patent. In a suit upon the purchase money note the effort was made to reduce the price to the full extent of the value at which this part was conveyed, but the court held that the vendee could only be allowed the sum which it had cost him to secure the state's title. (See also Denson v. Love, 58 Texas, 468.) This shows that the fact that parties contract about land which they suppose to belong to the vendor, but which in fact belongs to the state, does not of itself vitiate the contract nor preclude the creation of the relations established by such contracts generally, where they are supported by sufficient considerations. That contracts between individuals having for their direct object the acquisition of public lands in a lawful manner, are not void as against public policy, is also held in Miller v. Roberts, 18 Texas, 16; and such contracts have often been enforced in this state. Of course, a contract might be held void because it tended to the violation, evasion or hindrance of laws for the disposition of public lands, such as those regulating the sale of school land, and perhaps those which formerly regulated the acquisition of homestead donations and preemptions; but this would be true, not because of the mere fact that the contracts related to lands of the state, but because of their opposition to the law controlling the subject. We have no such contracts to deal with here. These parties believed, and were justified in believing, that this land belonged to Finley, and their contracts were not intended and had in themselves no tendency to injure the rights or interfere with the policy of the state.

Many decisions of this court have dealt with cases in which persons have contracted to purchase, or become tenants of, lands supposed to belong to those selling or renting but which in fact were public domain, subject to appropriation by themselves as homesteads or preemptions, and have, on discovering the truth, asserted the right affirmatively given to them by statute to acquire the title. In such cases the contracts were held to be without consideration and to interpose no obstacle to the acquisition of the land by the vendee or tenant. In none of them was a warranty deed given supported by a consideration other than the mere claim to public land, and none of them support the defense here urged to its fullest extent. Wheeler v. Styles, 28 Texas, 240; Rodgers v. Daily, 46 Texas, 82; Palmer v. Chandler, 47 Texas, 332; Houston v. Dickson, 66 Texas, 81; Swetman v. Sanders, 85 Texas, 94; Pain v. Miller, 35 Texas, 79.

If it were true, therefore, that the defendants had fully obtained the paramount title by merely paying or agreeing to pay so much money, we can not see that the mere fact that it had belonged to and was so obtained from the state, would prevent the application of the measure of damages generally applying under such circumstances between warrantor and warrantee. McClelland v. Moore, supra. But we must see that the operation of the rule upon the defendants would be just and also that it would be consistent with the statutes through which they hold under the state. By his purchase Williams did not finally obtain the state's title, nor was his payment and contract to pay all that was required of him. The statute gave him the right to purchase only as an actual settler and required him to occupy the land as a home for at least three years from the date of his purchase. It required him to pay one-fortieth of the price at the time of purchase and to execute his obligation to pay the balance of the principal at the end of forty years and the interest thereon annually, and gave him the option to pay the whole sum and obtain a patent only after the completion of his occupancy for three years from the date of his purchase. For failure to occupy at any time during this period or to pay the annual interest, his purchase was made forfeitable. The title remains in the state and the purchaser has only the right to acquire it by continued compliance with the conditions prescribed by the statute. Neither at the date of the institution of his action nor of the trial was it true, therefore, that Williams had acquired the title of the state by merely paying or agreeing to pay for it the amount allowed defendants as a credit on the purchase money notes, but he still labored under other onerous conditions the value of the performance of which can not be ascertained and measured in money. The rule under consideration could not, therefore, be applied to the case with justice to the defendants. What they were entitled to under the contract was an absolute and unconditional title to the land, and this they did not get either by the conveyance from Finley or the contract with the state. It is not true that if they are allowed credit for the price at which they bought from the state they will be in the same situation in which they would have been had they acquired a good title from Finley, and the assumption of such a condition of things is the basis of the rule for measure of damages applied by the judgment below.

The rule of law applied by the courts below as it would operate in this case, also appears to us to be inconsistent with the statutes regulating the sales of school lands and the rights of the state thereunder, and, like any other rule of common law, it must give way before a statute with which it conflicts. The state sells the land partly because of the qualifications and status of the purchaser as an actual settler. Because of this it asserts its right to sell and his to buy under such arrangements as that stated. To carry out the policy of the law the state has the right to insist upon the maintenance of its contract and of the relation created by it. A judgment such as that rendered below would tend to the destruction of both. By selling out the settler's title at judicial sale and putting the purchaser thereat in possession, it would destroy the occupancy of the settler—the condition on the maintenance of which the title depends—and could not at the same time require the purchaser at judicial

sale to perform it. If it be said that only by performance could he obtain the benefit of the purchase from the state, the answer is twofold: (1) there is no provision for the substitution of such a purchaser for the original one, and (2) performance would at best be optional with him and the rights intended to be secured by the law to the state would be dependent on his will. Many persons who might buy at such sales would be wholly disqualified under the law to hold these lands as purchasers. It is true that the law allows purchasers of school lands to sell them, even before the three years' occupancy has been completed, but it makes careful provision to secure the continued occupancy and the performance of other conditions. We are not speaking of rights that might exist after the condition of occupancy has been fully performed and the purchaser has the right to pay the entire price and obtain a patent. Such questions are not before us.

We are therefore of the opinion that the judgment is erroneous and that the only relief the plaintiff is entitled to, under the facts in this record, is an allowance for such part of the agreed consideration for the conveyance from him to Armstrong as was made up of the value of the two acre tract with improvements upon it at the time of the conveyance, and of the value of the improvements upon the three hundred acre tract at the same time, the latter to be measured by the sum in which they increased the value of the land itself, with interest thereon, less the amounts which have been paid. Should the payments made exceed the values found in favor of plaintiff, the defendants will, of course, be entitled to recover the excess. The plaintiff will not, for the reasons given, be entitled to enforce the lien asserted upon the three hundred acres. Palmer v. Chandler, supra. The questions as between plaintiff and his warrantor, Gilbert, and between Williams and Armstrong have not been discussed, but can doubtless be easily settled when plaintiffs' rights have been determined as directed. The case was not tried below with a view to such an adjustment and will therefore be remanded.

*Reversed and remanded.*