## HILL et al. v. ELLSWORTH et al.
### No. 1412–5607.

Commission of Appeals of Texas, Section A.
March 4, 1931.

Knollenberg & Cameron and S. J. Dodson, all of El Paso, for plaintiffs in error.

E. W. Earl, of El Paso, for defendants in error.

## HARVEY, P. J.

On February 23, 1927, C. S. Hill sold to G. Q. Ellsworth a tract of 341 acres of land in Culberson county. A general warranty deed to the land was executed by Hill to Ellsworth, and the latter took possession under the deed. Ten dollars of the purchase price was paid in cash, and Ellsworth executed his promissory notes for the balance, which amounted to $3,400. To secure payment of the notes, the vendor's lien was expressly reserved in the deed. The deed provided that "the said C. S. Hill retains one sixteenth (1/16) of all oil and mineral rights herein on said land." This suit was brought by Hill to recover on said purchase-money notes and to foreclose the vendor's lien. Ellsworth answered, and, in paragraph 3 of his answer, set out in full the deed above mentioned, and followed same with these allegations:

"That by the terms of said deed it was agreed and understood that the plaintiff did grant, sell and convey to this defendant said land, together with fifteen-sixteenths of the oil and mineral rights therein, and defendant in buying said land relied solely upon the agreement and representations set forth in said deed as being true and believed that same conveyed to him fifteen-sixteenths of the oil and mineral rights in said land, as well as the surface rights, but otherwise made no investigation of the title to said land; that the agreement set forth in said deed that same was conveying fifteen-sixteenths of the oil rights in said land was a material part of the contract, for the reason that defendant was buying said land for oil purposes; and defendant alleges that so believing and relying upon said agreements and representations made by the plaintiff in said deed, he executed said notes aggregating $3400.00 herein sued on, and received said deed, all of which he would not have done but for said agreements and representations, and the fact that said deed by its terms conveyed and defendant believed he was getting fifteen-sixteenths of the oil and gas as well as other minerals in said land, which were a part of the consideration of said notes.

"But defendant alleges that in the year 1908 said land was unsold public free school land of the State of Texas and was classified by the Commissioner of the General Land Office as mineral and grazing land, and as such was sold by the State of Texas to one J. P. Christian, on or about December 26, 1908, and in making such sale, under the general laws of the State of Texas reserved and retained all of the oil and minerals in said land, and the purchaser received no interest therein; that on or about September 19, 1914, said J. P. Christian conveyed said land to C. H. Richards, by general warranty deed, and in like manner said C. H. Richards conveyed said land to plaintiff, C. S. Hill, on October 25, 1916. That by said deed from plaintiff to defendant of February 23, 1927, hereinbefore described, no part of the oil and mineral rights in said land were acquired by this defendant from plaintiff, but in fact that only the surface rights passed thereby on account of the prior reservations made by the State by general laws that said land, by reason of the general laws of the State, is open to locations by the public for all minerals in said land, except as to the oil and gas therein, and that as to the oil and gas in said land defendant has no rights of ownership therein, except that under the so-called Relinquishment Act of 1919 defendant, as owner of the surface, has the right to sell or lease the oil and gas in said land, as agent for the State of Texas, but not as owner, and as and when so sold or leased he will be required to pay to the State of Texas one-half of any bonus or cash payment received and one-half of all rentals or royalties received or provided for; that the State has and is claiming a first and prior claim and liens for the sums due it; that defendant is not allowed by the law to develop the oil and gas in the land himself, but can only sell or lease the same in the manner above stated. That defendant did not become aware of the status of the title to the oil and gas rights in said land until after the decision of the Supreme Court of Texas in the case of Greene v. Robison, Commissioner, reported in 117 Tex. 516, 8 S.W.(2d) page 655, up to which time he believed that said conveyance to him from plaintiff was good and carried fifteen-sixteenths of the oil and mineral rights in said land, which decision construed the said Relinquishment Act, and as construed by said Court in said case, defendant has acquired no estate in the oil and gas in said land, and said Court interpreted said Act to fix a minimum price of ten cents per acre per annum as rental for a sale or lease of the oil and gas, and the value of one-sixteenth of the gross production free of cost to the State, for which the State is willing to sell the oil and gas, and the agent (the land owner) is authorized to secure the highest price obtainable for the benefit of the fund to which the land belongs, like amounts received by the State to be paid by the purchaser to the owner of the soil. If a bonus is paid, if a larger

royalty or other amounts are contracted for, the State and the owner of the soil received equally in like amounts.

"Defendant alleges that by reason of the failure or want of title to said oil and gas rights in said land, as above set out, said land was on February 23, 1927, has ever since been, and is now, of less value than the said agreed purchase price, and that defendant has been damaged in the sum of the said notes, herein sued on.

"Defendant further alleges that by reason of the facts stated above said notes so given for said land were given in part consideration for public domain of the State, that the title conveyed or property conveyed has failed or is wanting in whole or in part, and that said notes are without consideration and void, or in the alternative are partly without consideration and void; that this defendant has rescinded said contract; that the plaintiff has failed to keep, but has broken, the covenants, agreements and warranties of said deed, to defendant's damage; that defendant has heretofore tendered and now tenders to plaintiff all of defendant's rights, title and interest in said land, being all that he acquired from plaintiff, a deed thereto, and possession thereof, said land being vacant and unimproved, never having produced any income to this defendant, but plaintiff has refused to rescind said contract and to cancel said notes, and to receive said deed.

"Wherefore, defendant prays that plaintiff take nothing by this suit; that said notes be cancelled and plaintiff be reinvested with the title to said land, and the deed of trust lien securing same, on property in El Paso County, Texas, described in plaintiff's petition, be canceled and the cloud on the title to said property cast by said deed of trust be removed; and in the alternative that the amount of said notes be offset or reduced to the extent of defendant's said damages; for costs of suit, and all other and further relief, in law or in equity, that he may be justly entitled to, as he will ever pray."

The trial court sustained a general exception to said paragraph of the answer. Judgment was rendered in favor of Hill for the amount of the notes and for foreclosure. The case was appealed. The only complaint of error involved in the appeal relates to the action of the trial court in sustaining the general exception to paragraph 3 of the answer of Ellsworth. The Court of Civil Appeals [21 S.W.(2d) 741] reversed the judgment of the trial court, and remanded the case. Both parties were granted a writ of error.

It appears from the above allegations of the answer that Ellsworth, in buying the land, relied on the "representations and agreements contained in said deed." But since the deed contains no representations respecting title, we take it that no issue of fraud, on the part of Hill, is presented; nor is it thought that the issue of mistake, such as calls for the cancellation of the notes, is raised. So these well-recognized grounds of equity jurisdiction do not enter into the discussion.

According to the allegations of this paragraph of the answer, there is a total failure of title to the mineral estate in the land conveyed by the deed. Title to the mineral estate is shown to be in the state; and to this extent the consideration for the purchase money notes failed. Lamb v. James, 87 Tex. 485, 29 S. W. 647; Rayner Cattle Co. v. Bedford, 91 Tex. 642, 44 S. W. 410, 45 S. W. 554. This issue of partial failure of the consideration for the notes is sufficiently presented; but the facts alleged do not show an equitable ground for cancellation of all the notes. Although the vendor's lien was expressly reserved in the deed, thereby rendering executory for some purposes the conveyance evidenced by the deed, the conveyance, for the purpose of determining the right of cancellation of the notes, as asserted by Ellsworth, must be treated as executed and not executory. Ogburn v. Whitlow, 80 Tex. 239, 15 S. W. 807. The question, then, comes simply to this: Does the total failure of title to a material part of the land purchased under an executed conveyance, which is accompanied by the vendor's warranty of title, the vendee being ignorant, at the time of the purchase, of the deficiency of title in the respect mentioned, afford the vendee adequate ground, in the absence of fraud or mistake, for having all the purchase-money notes canceled? Due regard for contract rights requires a negative answer to the question. Under such a state of facts, a court of equity would not be justified in canceling, in so far as they are valid, the purchase-money obligations of the vendee. Justice does not require that the vendee be relieved entirely of his promise to pay.

By the conveyance for which the notes sued on were given, Ellsworth acquired title to the land except as to the mineral estate held by the state. The conveyance operated also to transfer to him certain statutory rights and privileges which pertained to ownership of the soil. That is to say, he became privileged as owner of the soil, to lease the land for oil and gas purposes, as agent for the state, and to receive from the lessee, for his own use, one-sixteenth of the oil and gas produced, as well as a share of the rentals accruing under the lease, provided such rentals exceeded a prescribed amount. Greene v. Robison, 117 Tex. 516, 8 S.W.(2d) 655. Yet notwithstanding all this, Ellsworth was entitled under his pleading, in the absence of special exception, to prove the necessary facts entitling him to an abatement of the purchase-money notes to such extent as to

confine Hill's right of recovery on the notes to such part of the agreed consideration for the conveyance, with interest, as was made up of the value, at the time of the conveyance, of the land (exclusive of the mineral estate) and the incidental rights and privileges, respecting the mineral estate, which passed under the deed. Williams v. Finley, 99 Tex. 468, 90 S. W. 1087.

For the reasons shown, the trial court erroneously sustained the general exception to paragraph three of Ellsworth's answer.

We recommend that the judgment of the Court of Civil Appeals, reversing the judgment of the trial court, be affirmed.

### CURETON, C. J.

Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.